463 P.2d 802

STATE of Utah, Plaintiff and Respondent,

v.

Emanual O. CHIMA, Defendant and Appellant.

STATE of Utah, Plaintiff and Respondent,

v.

Charles POWELL, and Mrs. Pearl Powell, Defendants and Appellants.
Nos. 11639, 11640.

Supreme Court of Utah.

Jan. 9, 1970.

Brian R. Florence, John Blair Hutchinson, Ogden, for appellant.

Vernon B. Romney, Atty. Gen., Salt Lake City, Lauren N. Beasley, David S. Young, Asst. Attys. Gen., Salt Lake City, for respondent.

HENRIOD, Justice:

Appeal from a judgment entered on a jury verdict finding defendants guilty of violating Title 76–52–1, Utah Code Annotated 1953 [1] having to do with disturbing or breaking up a lawful meeting. Affirmed.

The defendants were convicted of the charge at a trial in the City Court of Logan, Utah, by a judge sitting without a jury.[2] They all chose to appeal to the District Court of Cache County, Utah. On trial de novo, they were found guilty again, this time by a unanimous jury.[3] Upon pronouncing sentence, the trial judge intimated that he imposed the maximum sentence because an appeal appeared to be in the offing, but that nevertheless he intended not to punish Mrs. Powell at all, and the others not to the maximum extent, which then he did not deign to disclose.[4]

The competent, substantial and believable facts favorable to the verdict and sentence

1. "Every person who, without authority of law, wilfully disturbs or breaks up any assembly or meeting, not unlawful in its character, is guilty of a misdemeanor."
2. Case Nos. 14995 and 14996, City Court of Logan City, County of Cache, State of Utah.
3. Case Nos. 1476 and 1477, Criminal, District Court, First Judicial District, Cache County, Utah.
4. From the record: "You having waived the time for pronouncement of sentence, and the court is going to reserve jurisdiction in this case, so that if it does get

are not too complicated: One Julia Brown, a colored lady and paid speaker for an organization known as T A C T[5] Committee, was billed by poster, handbill and the news media as the speaker at a public meeting to be held at a date certain in a hired hall belonging to the Utah State University, Logan, Utah. There was no admission charge, although the publicity suggested that a dollar contribution would be welcomed. The defendants paid no heed to this latter urgence, but chose, rather, to recognize the invitation to attend sans tariff.

Not only was the speaker colored, but so was each of the defendants. No ethnic problem therefore, seemed to be a firecracker at the meeting. It seemed to have been a difference in philosophy that proved to be the explosive device that set off a verbal exchange that proved to provoke as clear and present a danger as a hot house full of bumble bees with high blood pressure. All was quiet on this western front —until quiz time came along. Those sponsoring the assembly had laid down some very simple ground rules to the effect that there would be answers only to questions written out by those in the audience. Before the rules otherwise were tested, defendant Chima stood up and said he would like to ask a question orally. His request was refused. He pursued his quest, saying first that he had no pencil, and then that he could not write English very well.[6] So: An exception was made for Chima, who proceeded, not to ask a question but to make a speech taking both Julia and her theme song apart. This seemed to generate in Julia a spirit of reciprocity characterized by some rather untender inferences of her own concerning Chima's status in the animal kingdom. Chima shouted at Julia, as did the Powells sitting next to Chima. The upshot: a novel assortment of strange, loud sounds and opprobrious epithets directed toward Julia,—who fled to her purse for a bit of protective Mace, which, fortunately, she did not use. In one outburst, Chima, with complete disdain for delicacy categorized Julia as being little more than black excreta. This hardly was fare to attract the dove of peace. The exchange of verbal brickbats resulted in one segment of the audience importuning another to toss Chima out of the place.

affirmed this Judge, if he is still alive and still sitting here, (or) he binds his successor, commits itself to extending leniency and clemency if it's finally affirmed. You may get it reversed, and especially Mrs. Powell. As long as the Resident Judge is sitting here, I say to you that unless another complication arises, it's not the intention of the court that any punishment be actually imposed on you. However, for the purpose of the record now it's the judgment of the court that * * * you and each of you serve six months in the Cache County Jail."

5. "Truth About Civil Turmoil."
6. He was from Biafra, Africa, and was some kind of subsidized student attending school in this country.

Quite obviously and effectively, this not only disturbed the paid-up patrons but also the assembly, and just as effectively broke up the meeting. There was no indication that the meeting was other than one "not unlawful in its character". There seems to have been significant unanimity of the trial judge at the first trial, the trial judge and jury at the second trial, and the justices of the court here, in a conclusion that defendants intentionally started the fracas that caused the sponsors of the meeting abruptly to adjourn the meeting, with evidence that there was an angry, almost militant crowd bent on some kind of violence in the very foreseeable future. So Julia did not get to answer the questions that may have been of burning moment to her fascinated listeners.

The defendants say that: 1) The statute is unconstitutional because it is vague and overbroad in scope; and that 2) the statute

was applied unconstitutionally to the defendants.[7]

■ As to 1): The subject statute heretofore has not been questioned in this Court on grounds urged by defendants, or otherwise. There is nothing vague about it, as a casual examination will reflect to any average, reasonable person. There is nothing overbroad about it either. The cases cited by defendants in support of the latter contention,[8] do not seem to fit the circumstances of the instant case, and consequently we conclude that this point on appeal is without merit.

■ As to 2): The thrust of defendants' technique on direct and cross-examination seems to be an attempt to demonstrate that Julia, by shouting back, was sort of a causa causans of the entire ruckus, and therefore trampled upon defendants' asserted constitutional right of free

7. Three other points on appeal having to do with the question of increased penalty on appeal, seem to have been resolved by State of North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (June 23, 1969). At oral argument, counsel for defendants conceded this as to two of the points.
8. Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940), says peaceful picketing is an adjunct of guaranteed free speech; the legislation struck down is not comparable to that of the instant case as to certainty and understandability; United States v. Carolene Products Co., 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938), a case involving "Filled Milk" transported in interstate

commerce, seems inapropos as analogue to the instant case and the statutes involved; Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965), deals with legislation that is much more protracted and obviously not nearly so clear and indulgent with specifics as that obtaining here, and cannot be said even to be similar; Terminiello v. Chicago, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949), is not only irrelevant for the reason that the language of the legislation is not nearly so clear and susceptible of easy understanding and the scope it seeks to embrace, but it has nothing to do with the First Amendment interdiction concerning freedom peaceably to assemble, but only with legislation prohibiting acts constitut-

speech. The simple answer to such reasoning is that more mundane entities did not choose to charge Julia with inciting a breach of the peace as was the case of the questionably divine preacher in Terminiello, cited in the footnote. Had she been charged similarly, she may have been found guilty under the Utah statute. This does not concern us, because it was the defendants who were charged with disturbing or breaking up a lawful assembly. Or she may have been the beneficiary, in such event, of an acquittal in a squeakier decision than Terminiello, and whose conclusion may have been akin to that based on a minor technicality concerning an instruction of the trial court, raised by no one save the court itself, as was the case in Terminiello. The cold fact is, that Julia was not charged,—and her back talk, assuming it to have been indiscreet or even punishable under a separate statute,—is no legal reason to immunize the defendants from violating the assembly statute.

Gratuitous platitudes anent the function of open debate being one to engender dispute; that the state may not penalize peaceful expression of unpopular views; that free speech even may provoke social change,[9] and the like, very well may be true in the abstract but hardly could be inspired in a case like the one we have here. More nearly affinitive is the Schenck case[10] with its interdiction to the effect that the First Amendment does not announce that freedom of speech may become a flammable torch of destruction if employed with cries of "fire" in a standing room only theatre. The Amendment certainly could not be interpreted so as to endow a religious fanatic with a constitutional right to disturb or break up the saying of Mass in the cathedral, or of stealing the stopper of the baptism font,—nor to conclude that freedom of speech is the unfettered property of a nut bent on cracking his or someone else's cranium. If at such a bourn we find our courts arriving in interpreting a pretty profound, and erstwhile understandable and protective scroll which many believe to have been divinely inspired, so as to make it simile with a Woolworth comic valentine,—well may the judicial edifice become the "poison tree" that kills itself because of some sort of approval given to a socio-philosophic fare upon which predators may acquire vitality to gnaw on and consume it. We hold point 2), supra, to be without merit.

■ This whole case is a rather novel one,—one in which the defendants claim or at least seem to take the position that their

---

ing a breach of the peace. It is significant to note that in Terminiello, the defendant was charged with inciting a riot outside the hall where a meeting was in session.

9. A healthy one, we presume.
10. Schenck v. United States, 249 U.S. 47, 39 S.Ct. 247, 63 L.Ed. 470 (1919).

right of free speech to which they claim heirship from the First Amendment, in some sort of way takes precedence over and allows invasion of another right given in the same First Amendment, separated only by grammatical interstices,—that of the right freely and peaceably to assemble. It is conceivable that one may use one of the swords,—or shields,—of that Amendment to protect himself or to punish his adversary, as the case may be, who in turn may demand the right to employ a second sword in like fashion. We think the rights or interdictions therein are identical twins, —one no master of the other.

As is noted in footnote 4, supra, the trial judge, in sentencing defendants indicated that ultimately he intended not to impose the maximum penalty and would not punish Mrs. Powell at all, and the others only in a degree less than the maximum, if their convictions were upheld. In so saying, this kindly, beloved jurist demonstrated the solid stuff of which he was created. It signified a sense of forgiveness and a desire to temper justice with mercy. His statement was almost premonitional, since this respected jurist passed away on the 11th day of September 1969, shortly after he uttered the words found in the footnote.

It is none of this court's business what a succeeding judge might assess by way of penalty in this case, in the absence of Judge Jones, but this court, under the circumstances of this case, would have no sense of regret whatever were Mrs. Powell to enjoy suspension of sentence, and the others suffer any penalty imposed, no more than that meted out by the judge of the Logan City Court.

CALLISTER, TUCKETT and EL-LETT, JJ., concur.

CROCKETT, C. J., concurs in the result.