*In re* PRICHARD ESTATE

(MURRELL v PARAGON TRANSPORT, INCORPORATED)

Docket Nos. 78-973, 78-974. Submitted August 27, 1979, at Detroit.—
Decided December 5, 1979. Leave to appeal applied for.

Ronald C. Murrell was granted a right of first refusal to purchase
all the stock of Earl C. Smith, Inc., by the last will and
testament of C. Carlton Prichard, who owned the stock. This
right was, by the terms of the will, subject to Murrell's remain-
ing in the employ of Smith until Prichard's death. On May 1,
1976, Murrell drafted a letter of resignation to be effective that
day, and on May 6, 1976, he withdrew it at the request of the
directors of Smith at a special board meeting held for the
purpose of acting upon the resignation. Later on May 6 Prich-
ard died. The executor of Prichard's estate recognized Murrell's
right of first refusal to purchase the Smith stock, and accepted
a bid from Paragon Transport, Incorporated, subject to Mur-
rell's right. Murrell chose to purchase the stock for the amount
of Paragon's bid. About 40 days later, Murrell notified the
executor that he had been refused a loan from one of the
financial sources he had been seeking. The same day Paragon
made a new offer to purchase, at a higher price than originally
bid. The executor shortly thereafter terminated Murrell's right
to purchase and accepted Paragon's bid.

Murrell brought a petition in St. Clair County Probate Court
to enjoin the sale of the stock to Paragon and for a construction
of Prichard's will granting Murrell the right to purchase the
stock. In two separate orders the probate court held that
Murrell had been granted a right of first refusal and enjoined
the sale of the stock to any party other than Murrell. Paragon
appealed the two orders to St. Clair Circuit Court, which

REFERENCES FOR POINTS IN HEADNOTES

[1] 4 Am Jur 2d, Appeal and Error §§ 182, 183.
[2] 53 Am Jur 2d, Master & Servant § 2.
[3, 8] 31 Am Jur 2d, Executors and Administrators § 369 *et seq.*
  80 Am Jur 2d, Wills § 1483.
[4] 42 Am Jur 2d, Injunctions § 2.
[5, 6] 80 Am Jur 2d, Wills § 1483.
[7] 4 Am Jur 2d, Appeal and Error § 76.

affirmed, Ernest F. Oppliger, J. Paragon appeals, and Murrell cross-appeals. *Held:*

1. Murrell's cross-appeal challenges Paragon's standing to appeal the probate court orders. Paragon in good faith entered into a contract to purchase the stock and could have done so except for the probate court orders. It is, therefore, an "aggrieved person" for the purpose of the statute regulating appeals from probate court, and has standing to appeal the orders.

2. The probate court's finding that Murrell was continuously employed by Smith until the time of Prichard's death was not erroneous, and the court was therefore correct in recognizing that Murrell did have a right of first refusal to purchase the stock.

3. The executor did not act unreasonably in terminating Murrell's right under the circumstances. The injunction was, therefore, improperly granted.

Reversed.

N. J. Kaufman, J., concurred separately. He would hold that Murrell's priority rights terminated when he notified the executor that he was unable to exercise his priority and neither requested an extension nor presented any assurances of performance.

J. H. Gillis, P.J., dissented. He would hold that the injunction was properly granted because under the circumstances and under the terms of the will the probate court did not clearly err in finding that the executor did not allow a reasonable length of time for Murrell to exercise his option. He would affirm.

### Opinion of R. B. Burns, J.

1. Parties — Aggrieved Persons — Appeal from Probate Court.

An aggrieved person, for purposes of acquiring standing to appeal from a probate court order, is one who has some interest of a pecuniary nature in the outcome of the case, and not a mere possibility arising from some unknown and future contingency.

2. Appeal and Error — Findings of Fact — Employment.

A probate court did not err in finding that a party had continued in the employ of his employer although he had tendered his resignation where during the time in question he maintained a continued commitment to the employer by attending a series of corporate meetings and participating in telephone calls and board meetings relative to the employer's business, he was

continuously paid during the time in question, and no employee benefits were withheld from him.

3. Executors and Administrators — Sale of Stock — Right of First Refusal.

An executor of a deceased person's estate did not act unreasonably in terminating a plaintiff's right of first refusal to purchase stock held by the deceased, which right was conferred upon the plaintiff by the will of the deceased, where some 40 days had passed after the plaintiff stated his intention to purchase the stock and where there is no indication that the executor acted in bad faith or with undue haste.

4. Injunction — Extraordinary Remedies.

Injunctive relief is an extraordinary remedy which issues only when justice requires it.

Opinion of N. J. Kaufman, J.

5. Wills — Testamentary Option to Purchase Property — Termination of Option.

*A petitioner's testamentary right of first refusal to purchase stock terminated when, more than a month after he indicated his intention to purchase, he notified the executor that he could not exercise his priority because of refusal of a potential financial backer to loan the money and the petitioner did not request an extension of time or present any assurances of performance.*

Dissent by J. H. Gillis, P.J.

6. Wills — Testamentary Options to Purchase Property — Exercise of Option.

*A testamentary option to purchase property must be exercised, if at all, within a reasonable time where no time for exercising the option is fixed by the will; what constitutes a reasonable time depends on the circumstances of the particular case.*

7. Appeal and Error — Findings of Fact — Clear Error.

*An appellate court should not set aside a finding of fact of a lower court unless such finding is clearly erroneous; a finding is clearly erroneous where, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made.*

8. Executors and Administrators — Sale of Stock — Right of First Refusal.

*An executor acted prematurely in terminating a petitioner's*

*testamentary right of first refusal to purchase stock owned by
the decedent where the will provided that terms of such sale
were to be mutually agreed upon and there is no claim that the
petitioner had agreed to the executor's proposed date for clos-
ing the transaction, where the petitioner was given only 40
days to arrange financing of a large sum, and where the
executor was aware that petitioner was seeking financing from
several sources.*

*Matheson, Bieneman, Parr, Schuler & Ewald* (by
*R. Ian Hunter* and *James D. Osmer),* and *Dickin-
son, Wright, McKean, Cudlip & Moon* (by *Kenneth
J. McIntyre* and *John A. Stevens),* for plaintiff.

*Schlussel, Lifton, Simon, Rands, Kaufman, Le-
sinski & Jackier,* and *Simpson, Moran & Burnett,*
for defendant.

Before: J. H. GILLIS, P.J., and R. B. BURNS and
N. J. KAUFMAN, JJ.

R. B. BURNS, J. In this action both plaintiff and
defendant assert a right to purchase all the stock
of Earl C. Smith, Inc. (Smith), a Michigan corpora-
tion.[1] The Smith stock was owned by C. Carlton
Prichard (Prichard) who died on May 6, 1976.
Plaintiff asserts a right to purchase the stock
pursuant to a right of first refusal granted to him
by the Last Will and Testament of Prichard. De-
fendant asserts its right pursuant to a contract
entered into between it and the executor of the
Prichard estate. Two lower courts have held plain-
tiff's claim to be superior.

Plaintiff was employed by Prichard as an officer
of Smith. In his will Prichard granted to plaintiff
an opportunity to purchase all the Smith stock at
its fair market value should plaintiff continue in

---

[1] The stock of a second corporation owned by Prichard, Magra, Inc.,
was held by the probate court to be included within the sale of the
Smith stock. That holding is not in dispute.

Prichard's employ until Prichard's death. On April 30, 1976, Prichard and plaintiff had an apparently inexplicable falling out and plaintiff offered to resign his position. Prichard told plaintif to "Go ahead".

The following day, plaintiff drafted a letter of resignation which stated that his resignation was effective on that date, May 1, 1976. Defendant contends that this resignation terminated plaintiff's employment at Smith and prevented him from meeting the condition imposed under Prichard's will. Plaintiff contends that the resignation was ineffective, and alternatively, if it ever became effective, that it was rescinded when he withdrew it at the request of the Smith directors at a special board meeting held on May 6, 1976, prior to Prichard's death.

After Prichard's death, the executor of Prichard's estate recognized plaintiff's right of first refusal and solicited bids on the Smith stock, subject to that right, to establish the stock's fair market value. Defendant's bid of $2,850,000 was accepted by the executor, subject to plaintiff's right, on November 15, 1976. By letter of November 17, 1976, plaintiff was advised that he had until December 15, 1976, to exercise his right of first refusal to purchase the stock for $2,850,000. On December 15, 1976, plaintiff chose to exercise his right and the following day defendant was notified that the executor, having deemed plaintiff's exercise proper, had accepted it.

On January 21, 1977, plaintiff advised the executor that his application for a loan from one of the financial sources he had been working with had been turned down. On that same day, defendant made a new offer to purchase the stock for $2,950,-000. Three days later, on January 24, 1977, the

executor told plaintiff that plaintiff's right to consummate the stock purchase was being terminated. Immediately thereafter, defendant's January 21st offer was accepted.

On January 26, 1977, plaintiff sent a letter to the executor asserting the continued existence of his right to purchase the stock and objecting to the acceptance of defendant's new offer. Plaintiff then began a civil action in St. Clair County both to enjoin the sale of the Smith stock to defendant and for a construction of Prichard's will granting plaintiff the right to purchase the stock. On February 28, 1977, the St. Clair Probate Court entered an order holding that Prichard's will granted plaintiff a right of first refusal to purchase the Smith stock. In a separate order of the same date, the court enjoined the sale of the stock to any party other than plaintiff.

Appeal was taken from the two probate court orders to the St. Clair Circuit Court by defendant. On December 30, 1977, the circuit court affirmed the probate court orders.[2] Defendant appeals by leave granted and plaintiff cross-appeals on a procedural issue.

On cross-appeal plaintiff has challenged defendant's standing to appeal the probate court orders under review.

---

[2] On December 30, 1977, the circuit court also entered an order denying defendant's petition for enforcement of a settlement agreement. This second order is appealed by defendant but because of our disposition of defendant's appeal of the first circuit court order we do not rule upon this issue. However, we note that we have found several indications in the transcript of the hearing regarding the alleged settlement agreement which support the circuit court's conclusion that though the matter was "99.9% agreed upon by the parties" no binding settlement had been reached. Furthermore, we would be reluctant in this situation to overturn the finding of the circuit court judge who was present at the chambers conference at which the settlement was discussed and who was thereby in the best position to grasp the nuances of the discussion.

Defendant's standing in the probate court was recognized by that court. PCR 109.2 permits a probate court to make a specific determination as to interested parties who are not defined by statute or court rule and since plaintiff did not cross-appeal from that ruling to the circuit court we may not review the probate court's recognition of defendant. Plaintiff did, however, move the circuit court to dismiss defendant's appeal on the ground that defendant lacked standing to appeal from the probate court orders because it was not a "person aggrieved" within the meaning of MCL 701.45a; MSA 27.3178(45.1).

A definition of an "aggrieved person" was stated by the Supreme Court in *In re Estate of Matt Miller*, 274 Mich 190, 194; 264 NW 338 (1936):

"To be aggrieved, one must have some interest of a pecuniary nature in the outcome of the case, and not a mere possibility arising from some unknown and future contingency."

The facts of this case present an unusual situation. Defendant has in good faith entered into a seemingly binding contract for the purchase of the Smith stock. But for the probate court orders the contract could have been executed. We conclude, therefore, that defendant should be regarded as a person aggrieved and that the circuit court did not err in denying plaintiff's motion to dismiss.

In its appeal to this Court, defendant contends that the lower courts erred when they found plaintiff had continued in Prichard's employ until Prichard's death and had thus garnered a right to purchase the Smith stock. Defendant argues that although plaintiff may have returned to Smith before Prichard's death, plaintiff's actions caused a hiatus in his employment at Smith which pre-

vented him from being in Smith's continuous employ. Defendant further argues that plaintiff's attempt at rescinding the resignation was ineffective because proper notice for the May 6, 1976, board of directors meeting was not given as provided in the Smith bylaws and as mandated by MCL 450.1521(2); MSA 21.200(521)(2).

At the request of the Court, the parties submitted supplemental briefs on the issue of whether defendant has standing to challenge the validity of the May 6, 1976, meeting of Smith's board of directors. The purpose of the meeting was to act on the resignation of plaintiff. At the meeting a board member moved to decline plaintiff's resignation. The motion was not acted upon, as plaintiff undertook to withdraw his resignation.

The meeting was held without proper notice and outside the presence of the director who was the corporation's sole stockholder, Prichard. Had one of the directors objected the actions taken at the meeting would have been voided. However, no objection to the meeting has been made by any of the directors.

Because of the interrelation of plaintiff's right of first refusal and defendant's contractual right to purchase the Smith stock, we believe that, had the actions taken at the May 6th meeting been voided by any of the directors, defendant could have interposed that fact in support of its position that plaintiff did not acquire a right of first refusal. However, we do not believe that defendant's objection to the conduct of the meeting will itself void the meeting or the actions taken therein.

It is uncontested that the will provision in question is a condition precedent to the vesting of a right of first refusal in plaintiff. Prichard's will provides that plaintiff's right will vest if plaintiff

"continues in my [Prichard's] employ until the time of my death * * *". The probate court did not expressly address the meaning of the phrase "continues in my employ". However, at a February 10, 1977, hearing the court made the following finding:

"It is my finding [plaintiff] was an employee of the Earl Smith, Inc., from the time of making the Will until Mr. Prichard's death; and I don't know if he was an officer all that time."

Thus the probate court found that plaintiff had been continuously employed at Smith and had satisfied the most restrictive possible construction of the will provision, whether or not this restrictive construction was intended by Prichard.

After having reviewed this matter, we cannot say that the probate court erred in its finding of fact. Plaintiff maintained a continued commitment to Smith. He attended a series of corporate meetings during the period from May 1, 1976, the date of his letter of resignation, to May 6, 1976, the date of Prichard's death. Plaintiff participated in two telephone calls and two board meetings relative to Smith business. He was continuously paid by Smith during the period in question and no benefits were withheld from plaintiff as an employee.

Having concluded that the lower courts did not err in recognizing in plaintiff a right of first refusal to purchase the Smith stock we next consider whether the lower courts were correct in enjoining the sale of the stock to anyone other than plaintiff. In this we focus on the reasonableness of the actions taken by the executor in terminating plaintiff's right and entering the January 24, 1977, contract with defendant.

The executor had recognized plaintiff's testamentary right of first refusal. Though there was no written contract between plaintiff and the executor they could both expect that the sale would take place within a reasonable time. Some 40 days, as well as the first deadline set by the executor for closing with plaintiff, passed between the executor's acceptance of plaintiff's notice of his intention to exercise his right and the day the executor informed plaintiff that he intended to accept defendant's bid for the Smith stock. There is no indication that the executor acted in bad faith nor is there any reason to believe that the executor acted with undue haste in terminating plaintiff's right of first refusal. The executor was charged with administering the Prichard estate and with selling the Smith stock. In accordance with Prichard's intent, as perceived by the executor, the stock was first offered to plaintiff. We do not believe that it was proper to enjoin the sale of the stock to anyone other than plaintiff after the executor determined that plaintiff's right of first refusal should be terminated. Injunctive relief is an extraordinary remedy which issues only when justice requires and it should not have been granted under the circumstances of this case.

Accordingly, the injunction issued by the probate court is lifted and the contract for the sale of the Smith stock between defendant and the executor of Prichard's estate is recognized.

The cause is reversed. Costs to defendant.

N. J. KAUFMAN, J. *(concurring).* I agree with the sound reasoning and rationale employed by Judge GILLIS in his well-written opinion. However, I must disagree with his ultimate conclusion and concur in the result reached by Judge BURNS. Both opin-

ions correctly point out that the executor had accepted petitioner's right of first refusal on December 15, 1976. Thereafter, on January 21, 1977, petitioner notified the executor that he could not exercise his priority, as one of his financial backers withdrew. At this point, in my opinion, the petitioner's priority rights terminated. If the petitioner had requested a time extension of the executor or presented assurances of performance to him, the parties could have provided for the continuance of petitioner's priority for a reasonable time. Absent such measures, I do not consider the actions taken by petitioner sufficient to preserve his preemptive position.

I too would reverse.

J. H. Gillis, P.J. *(dissenting)*. I concur with the majority's conclusion that the lower courts did not err in recognizing in petitioner a right of first refusal to purchase the Smith stock. I, however, cannot agree that the lower courts clearly erred in finding that the executor had not extended a reasonable time within which to exercise petitioner's option.

Where no time for exercising a testamentary option to purchase property is fixed by the will, the option must be exercised, if at all, within a reasonable time. 96 CJS, Wills, § 1104; 80 Am Jur 2d, Wills, § 1481. What constitutes a reasonable time depends on the circumstances of the particular case. Anno: *Time in which option created by will to purchase real estate is to be exercised,* 82 ALR3d 790, § 4, p 795.

In the present case, both lower courts found that petitioner had not exceeded the reasonable time within which he was required to exercise his option as of the date of the executor's termination of

petitioner's right and his acceptance of respondent's offer.

An appellate court must give due deference to the findings of a lower court. An appellate court will not set aside a finding of fact of a lower court unless such finding is clearly erroneous. *Smith v Michigan State Accident Fund*, 403 Mich 201; 267 NW2d 909 (1978). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Tuttle v Dep't of State Highways*, 397 Mich 44, 46; 243 NW2d 244 (1976).

The parties do not dispute the timeliness of petitioner's notice of his intention to exercise his right. The question presented is whether a reasonable time within which to consummate the transaction had passed by January 24, 1977. I would hold that it had not.

I begin by noting that the testamentary provision in question herein provides in relevant part:

"Payment shall be made by the said RONALD C. MURRELL upon such terms and conditions as my executor and the said RONALD C. MURRELL shall *mutually* agree." (Emphasis supplied.)

I further note that a mutually established closing date was never set. December 31, 1976, was the date as of which the executor intended to consummate the sale. January 15, 1977, was the executor's target date for closing the transaction. There is no claim that petitioner agreed to either of these dates. A finding that petitioner failed to consummate the transaction within a reasonable time cannot be predicated upon his failure to comply with these unilaterally set tentative closing dates.

An examination of the following facts necessitates the conclusion that the lower courts did not clearly err in finding that the executor had not extended petitioner a reasonable time. The amount of financing which petitioner had to secure in order to effect the purchase was $2,850.000. Petitioner was given 40 days within which to arrange such financing. I would hold that 40 days is not a reasonable time within which to require one to secure financing in that large sum. The amount of money involved, alone, supports the lower courts' determination that petitioner was not extended a reasonable time.

Moreover, I note the following factors. On January 21, 1977, petitioner advised the executor that his application for a loan from one financial source had been turned down. The executor was aware of the fact that petitioner was seeking financing from several lending institutions. Furthermore, respondent's offer of January 20, 1977, was in the amount of $2,950,000, $100,000 more than petitioner's option price.

On the basis of the foregoing, I would find that the executor acted prematurely in terminating petitioner's right. Injunctive relief is an extraordinary remedy which issues only when justice requires. Justice did so require under the circumstances of this case. The lower courts were correct in enjoining the sale of the stock to anyone other than the petitioner.

I would affirm.