*In re* PRICHARD ESTATE

MURRELL v PARAGON TRANSPORT, INC

Docket No. 64664. Decided March 10, 1981. On application by the parties for leave to appeal the Supreme Court, in lieu of granting leave to appeal, reversed the judgment of the Court of Appeals and reinstated the judgments of the circuit court and probate court. Rehearing denied 411 Mich 1120.

Ronald C. Murrell was given the right of first refusal to purchase at its fair market value all of the stock of Earl C. Smith, Inc., by the will of C. Carlton Prichard, who owned the stock. The executor of Prichard's estate, after receiving an offer of $2,850,-000 from Paragon Transport, Inc., notified Murrell by letter on November 17, 1976, that Murrell had until December 15, 1976, to purchase at that price. On December 15 Murrell exercised his right of first refusal and tendered a $50,000 deposit. On January 21, 1977, Murrell notified the executor that one of his applications for a loan had been rejected by a bank. Paragon increased its offer, and on January 24 the executor told Murrell that his right to purchase had ended and accepted Paragon's offer. On January 26 Murrell wrote to the executor objecting to Paragon's purchase and on January 28 commenced an action in the Probate Court of St. Clair County against the executor and Paragon to prevent the sale to Paragon and require sale to him. On February 2 he obtained from another bank a loan commitment sufficient to complete the transaction, and notified the executor of this and offered to complete the purchase within two weeks. The probate court, R. Gerald Barr, J., entered orders holding that the will granted Murrell the right of first refusal and forbidding the sale of stock to anyone other than him. The St. Clair Circuit Court, Ernest F. Oppliger, J., affirmed. The Court of Appeals, R. B. Burns and N. J. Kaufman, JJ. (J. H. Gillis, P.J., dissenting), reversed (Docket Nos. 78-973, 78-974). Murrell applies for leave to appeal. In a unanimous per curiam opinion, the Supreme Court *held:*

The option of Mr. Murrell ripened, on December 15, 1976, into a bilateral contract of purchase; because the contract did not specify a time for performance, the law will presume a reasonable time. The 40 days given to Murrell by the executor

was not a reasonable time on these facts. Furthermore, no specific date was mutually agreed upon to close this transaction. It was unreasonable for the executor to afford no prior notice of termination whatever to Mr. Murrell. Although not objecting immediately upon notification, Mr. Murrell rejected the notice within two days and continued to assert his right to purchase the stock. The amount which he had to obtain was large, $2,850,000, and he made substantial and continuing efforts to place himself in a position to perform under the contract.

The judgment of the Court of Appeals is reversed and the judgments of the circuit and probate courts reinstated.

94 Mich App 116; 288 NW2d 598 (1979) reversed.

*Matheson, Bieneman, Parr, Schuler & Ewald* (by *R. Ian Hunter* and *James D. Osmer; Dickinson, Wright, McKean, Cudlip & Moon,* by *Kenneth J. McIntyre,* of counsel) for plaintiff.

*Schlussel, Lifton, Simon, Rands, Kaufman, Lesinski & Jackier* and *Simpson, Moran & Burnett* for defendant.

PER CURIAM. We are asked to decide how the lapse of time, after the exercise of an option to purchase, affects the right to complete that purchase when the instrument creating the option is silent on the point. On this record, we believe the probate judge was correct in requiring a "reasonable" amount of time and in concluding that the 40 days extended to the plaintiff was not a reasonable amount of time to allow him to complete this purchase.

I

On May 6, 1976, C. Carlton Prichard, the owner and sole shareholder of Earl C. Smith, Inc. ("Smith"), died testate. Among the provisions of

his will was a paragraph on disposition of his stock in Smith:

"In the event that Ronald C. Murrell who is now in my employ as manager of Earl C. Smith, Inc., a Michigan corporation, all of the capital stock of which is owned by me, continues in my employ until the time of my death and should he desire to purchase all of the capital stock of the said Earl C. Smith, Inc., it is my will and I direct and empower my executor to grant him, the said Ronald C. Murrell, the right of first refusal to purchase all, but not less than all, of said capital stock at its fair market value. Payment shall be made by the said Ronald C. Murrell upon such terms and conditions as my executor and the said Ronald C. Murrell shall mutually agree. Said right shall be personal to the said Ronald C. Murrell and shall not be subject to assignment in any manner whatsoever."

On April 30, 1976, Mr. Prichard had returned from Mayo Clinic in Minnesota and, for an unexplained reason, told Mr. Murrell to "Get the hell out of my house and never cross my path again". Mr. Murrell responded that Mr. Prichard would have his resignation in the morning. The next day, Mr. Murrell typed and apparently mailed his resignation and cleaned out his office. Mr. Prichard entered the hospital on that day.

On May 4, 1976, a notice was sent to the members of the Smith Board of Directors notifying them of a special meeting to be held May 6, 1976. The subject of the meeting was stated to be Mr. Murrell's resignation. Mr. Murrell attended the meeting at the request of the directors. At the meeting, the directors persuaded Mr. Murrell to withdraw his resignation.

After Mr. Prichard's death, the executor of Prichard's estate recognized a right of first refusal in Mr. Murrell and solicited bids to establish the

fair market value of the Smith stock. The highest bid ($2,850,000) was received from Paragon Transport. The bid was accepted on November 15, 1976, subject to Mr. Murrell's right of first refusal. By letter of November 17, 1976, the executor advised Mr. Murrell that he had until December 15, 1976 to purchase the stock for $2,850,000.

On December 9, 1976, Mr. Murrell wrote to the executor requesting a 30-day extension of time in which to exercise the testamentary option. The executor denied the request. On December 15, 1976, Mr. Murrell then exercised his right of first refusal and tendered a $50,000 deposit.

On January 21, 1977, Mr. Murrell notified the executor that Manufacturers National Bank, one of the sources from which he had been seeking financing, had rejected his loan application. That same day, Paragon increased its offer to $2,950,-000. On January 24, 1977, the executor told Mr. Murrell that his right to consummate the purchase had ended. Mr. Murrell did not then object. The executor then accepted Paragon's latest offer.

On January 26, 1977, Mr. Murrell wrote to the executor asserting the continued existence of a right to purchase the stock and objecting to the acceptance of Paragon's offer. On January 28, 1977, Mr. Murrell initiated this action in probate court to prevent the sale of stock to Paragon and to require sale to him.

On February 2, 1977, Mr. Murrell obtained from Michigan National Bank of Port Huron a loan commitment sufficient to complete the transaction. That same day he notified the executor of the Michigan National Bank action and offered to complete the purchase within two weeks.

On February 28, 1977, after hearing the testimony of Mr. Murrell and other witnesses, the

probate court entered orders holding that Mr. Prichard's will granted Mr. Murrell a right of first refusal to purchase the Smith stock, and forbidding the sale of the stock to anyone other than Mr. Murrell. The circuit court affirmed. The Court of Appeals reversed in three separate opinions. 94 Mich App 116; 288 NW2d 598 (1979).

## II

Judge ROBERT BURNS "focus[ed] on the reasonableness of the actions taken by the executor in terminating plaintiff's right and entering the January 24, 1977, contract with defendant". 94 Mich App 124. He recognized that both Mr. Murrell and the executor could expect that the sale would be consummated within "a reasonable time" after December 15, 1976. The passage of 40 days did not indicate to Judge BURNS "undue haste in terminating plaintiff's right of first refusal". 94 Mich App 125. Judge KAUFMAN agreed that Mr. Murrell's acts were not "sufficient to preserve his preemptive position". 94 Mich App 126. Judge GILLIS, in dissent, noted that this will provided for Mr. Murrell and the executor to mutually agree on the terms of the sale:

"I further note that a mutually established closing date was never set. December 31, 1976, was the date as of which the executor intended to consummate the sale. January 15, 1977, was the executor's target date for closing the transaction. There is no claim that petitioner agreed to either of these dates. A finding that petitioner failed to consummate the transaction within a reasonable time cannot be predicated upon his failure to comply with these unilaterally set tentative closing dates.

"An examination of the following facts necessitates the conclusion that the lower courts did not clearly err

in finding that the executor had not extended petitioner a reasonable time. The amount of financing which petitioner had to secure in order to effect the purchase was $2,850,000. Petitioner was given 40 days within which to arrange such financing. I would hold that 40 days is not a reasonable time within which to require one to secure financing in that large sum. The amount of money involved, alone, supports the lower courts' determination that petitioner was not extended a reasonable time." 94 Mich App 127-128.

The option ripened, on December 15, 1976, into a bilateral contract of purchase. *LeBaron Homes, Inc v Pontiac Housing Fund, Inc,* 319 Mich 310, 315; 29 NW2d 704 (1947). When a contract does not identify a time for performance, as this one did not, "the law will presume a reasonable time". *Duke v Miller,* 355 Mich 540, 543; 94 NW2d 819 (1959). We agree with Judge GILLIS and the courts below that 40 days was not a reasonable time on these facts. Furthermore, no specific date was mutually agreed upon to close this transaction. It was unreasonable for the executor to afford no prior notice of termination whatsoever to Mr. Murrell. Although not objecting immediately upon notification, Mr. Murrell rejected the notice within two days and continued to assert his right to purchase the stock. The record shows Mr. Murrell made substantial efforts to obtain financing from both Michigan and out-of-state banks. Manufacturers National Bank did reject his application on January 21. An application was before the Central Loan Committee of Michigan National Bank of Port Huron the following Wednesday and approved on February 2. He made a continuing effort to place himself in a position to perform under the contract.

In lieu of granting leave to appeal, pursuant to GCR 1963, 853.2(4), we reverse the judgment of the

Court of Appeals and reinstate the judgments of the circuit court and probate court. The defendant's application for leave to appeal as cross-appellant is considered and it is denied, because we are not persuaded that the questions presented on cross-appeal should be reviewed by this Court.

COLEMAN, C.J., and KAVANAGH, WILLIAMS, LEVIN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred.