*In re* PRICHARD ESTATE

Docket Nos. 82086, 82087. Submitted March 10, 1987, at Detroit.
    Decided June 7, 1988. Leave to appeal applied for.

Comerica Bank-Detroit, executor of the estate of C. Carlton
    Prichard, deceased, and Ronald C. Murrell and Murrell Enter-
    prises, Inc., filed motions in the St. Clair Circuit Court seeking
    to recover damages on letters of credit given as security by
    Paragon Transport, Inc., when a preliminary injunction was
    entered by the circuit court in an action regarding the sale of
    certain stock. The motions were ordered consolidated for pur-
    poses of a hearing thereon. The circuit court, Ernest F. Oppli-
    ger, J., held that Murrell was wrongfully enjoined by Paragon
    from consummating the stock purchase and could recover
    damages of $609,606.53. Comerica was found to be estopped
    from recovering damages and a judgment denying relief to
    Comerica was entered. Paragon and Comerica appealed to the
    Court of Appeals. Both appeals were dismissed in April, 1984,
    for lack of jurisdiction. On November 30, 1984, the Supreme
    Court vacated the Court of Appeals orders and remanded the
    appeals to the Court of Appeals for consideration as on leave
    granted. 419 Mich 964 (1984). The appeals were consolidated by
    the Court of Appeals.

The Court of Appeals *held:*

1. The circuit court correctly determined that the enjoinment
of Murrell was wrongful. The trial court clearly erred, however,
in awarding damages to Murrell in excess of $500,000, the
amount of the letter of credit in regard to Murrell, since the
amount of recovery is limited to the bond amount, absent a
showing that the injunction was issued maliciously or in bad
faith.

2. The circuit court clearly erred in awarding preinjunction
costs to Murrell. The $61,541.79 award for such costs is re-
versed. The circuit court's decision to accept the testimony and
calculations of Murrell's expert witness as the more logical and

REFERENCES

Am Jur 2d, Injunctions §§ 359 *et seq.*
Recovery of damages resulting from wrongful issuance of injunction
    as limited to amount of bond. 30 ALR4th 273.

accurate figure for calculating damages was not clearly errone-ous. The circuit court's use of July 1, 1977, as the date from which lost profits were to be calculated was not clearly errone-ous.

3. The circuit court properly determined that the preliminary injunction remained in effect during the appeal period. The circuit court did not clearly err in awarding damages based on events occurring subsequent to the date the circuit court af-firmed the probate court's orders in the underlying action. No failure to mitigate damages was shown.

4. The circuit court's prejudgment interest award computa-tions were correct.

5. The circuit court clearly erred in ruling that Comerica was equitably estopped from recovering under the letter of credit. Comerica is entitled to damages proximately caused by the injunction. Comerica should be awarded damages and costs not to exceed $200,000, the letter of credit amount in regard to Comerica. Because the circuit court made no factual findings on this damage issue, the appropriate relief is to remand the case to the circuit court to decide the issue of damages.

Affirmed in part, reversed in part and remanded.

1. INJUNCTIONS — BONDS.

A trial court may issue an injunction conditioned on the party requesting the injunction giving security for damages caused by wrongful enjoinment; the court rules establish a summary proceeding wherein a party wrongfully enjoined may recover damages on a bond or other security (GCR 1963, 525 and 718.3[1]).

2. DAMAGES — INJUNCTIONS — BONDS.

Recovery of damages arising from a wrongful preliminary injunc-tion is limited to the amount of the bond given as security for damages caused by wrongful enjoinment, absent a showing that the preliminary injunction was issued maliciously or in bad faith (GCR 1963, 525 and 718.3[1]).

3. DAMAGES — INJUNCTIONS — BONDS.

The object of an award for damages in an action on an injunction bond is to compensate the party wrongfully enjoined for dam-ages proximately resulting from the injunction; parties cannot recover for damages which could have been avoided by reason-able effort or expenditure; the party seeking damages has a duty to mitigate damages; benefits arising from the breach must be deducted from damages otherwise payable.

4. INJUNCTIONS — BONDS.

The general rule is that where an injunction bond is given there is no liability on the bond for damages sustained before the injunction was granted.

5. APPEAL — FINDINGS OF FACT.

A circuit court's factual findings are reviewed on appeal under the clearly erroneous standard (MCR 2.613[C]).

6. EQUITY — ESTOPPEL.

Equitable estoppel rests in broad principles of justice; parties who successfully maintain one position in a lawsuit are barred from taking an inconsistent position in a subsequent lawsuit in law or equity on the same actual issue.

7. EQUITY — APPEAL — STANDARD OF REVIEW.

The standard of review in equity actions is de novo, with no reversal unless the trial court's findings were clearly erroneous or the Court of Appeals concludes that it would have reached a different result had it occupied the trial court's position.

*Simpson & Moran* (by *Patrick A. Moran* and *David M. Black*), for Paragon Transport, Inc.

*Smith & Brooker, P.C.* (by *Albert C. Hicks*), for Comerica Bank-Detroit, Executor of the Estate of C. Carlton Prichard, deceased.

*Matheson, Parr, Schuler, Ewald, Ester & Cooke* (by *James D. Osmer*), for Ronald C. Murrell and Murrell Enterprises, Inc.

Before: CYNAR, P.J., and WEAVER and M. H. CHERRY,* JJ.

M. H. CHERRY, J.

I

These consolidated appeals involve actions by Ronald C. Murrell and Murrell Enterprises, Inc., and Comerica Bank-Detroit, formerly known as

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Detroit Bank & Trust Company, to recover damages on letters of credit given as security obtained by Paragon Transport, Inc., pursuant to a 1977 preliminary injunction order. The letters of credit were in the amounts of $500,000 and $200,000 payable to the account of Murrell and Comerica, respectively. In December, 1983, a judgment of $609,606.53 was entered for Murrell and a judgment denying any relief to Comerica on equitable estoppel grounds was entered. Paragon and Comerica, respectively, appeal as of right from the December, 1983, judgments.

The facts are not in substantial dispute. C. Carlton Prichard died testate on May 6, 1976. Comerica was appointed executor of his estate. Prichard's will granted to Murrell, an employee of Earl C. Smith, Inc., one of two corporations owned by Prichard, the right of first refusal to purchase all the capital stock owned by Prichard at its fair market price. The other corporation owned by Prichard was known as Magra, Inc. Comerica solicited bids on the stock, subject to Murrell's right of first refusal. Paragon was the successful bidder. Murrell chose to exercise his right to purchase the stock, but ran into difficulty obtaining financing. One potential financing source, Manufacturer's National Bank, rejected his loan application. On January 24, 1977, Comerica notified Murrell that his right to consummate the stock purchase was being terminated; Paragon's latest offer was accepted. Murrell responded by filing a petition in the St. Clair County Probate Court for construction of Prichard's will and for an injunction to prevent Comerica from selling Prichard's stock to Paragon. In February, 1977, Murrell obtained a loan commitment from Michigan National Bank of Port Huron. On February 28, 1977, an order was entered construing Prichard's will favorably to

Murrell and recognizing that his right of first refusal existed. An order granting a preliminary injunction enjoining Comerica from selling the stock of Smith and Magra to any party other than Murrell was entered by the probate court.

Paragon appealed the two probate court orders to the St. Clair Circuit Court and also requested an injunction preventing Comerica from selling the stock to Murrell. On August 23, 1977, the preliminary injunction order was entered, with the condition that Paragon file the two letters of credit which are the subject matter of this appeal.

On December 30, 1977, the circuit court entered an order affirming the two probate court orders and remanding the matter to the probate court for further proceedings. Paragon appealed that determination to this Court, which reversed the circuit court order in three separate opinions. *In re Prichard Estate,* 94 Mich App 116; 288 NW2d 598 (1979). On March 10, 1981, our Supreme Court reversed the determination of this Court and reinstated the judgments of the circuit and probate courts. *In re Prichard Estate,* 410 Mich 587; 302 NW2d 554 (1981), reh den 411 Mich 1120 (1981).

Comerica filed a petition in the probate court for instructions on how to proceed to finalize the sale of Prichard's capital stock to Murrell. The probate court entered an order instructing Comerica to proceed to negotiate with Murrell, to present areas of disagreement to the probate court, and to present the final sales agreement to the probate court for approval. On December 21, 1981, the sales agreement was approved. In January, 1982, the preliminary injunction issued by the circuit court was dissolved and the capital stock sale between Comerica and Murrell closed.

Comerica and Murrell filed separate motions to recover damages from Paragon under the letters of

credit. Murrell's motion, filed June 30, 1981, under GCR 1963, 525 and 763, now MCR 3.604, preceded the close of the stock sales transaction. Comerica's motion, filed May 10, 1982, or subsequent to the closing, was made under GCR 1963, 525 and 763 and 718.3, now MCR 3.604 and 3.310(D). Damages caused by Paragon's "wrongful enjoinment" were sought. On July 19, 1982, the motions were ordered consolidated for purposes of a hearing on whether Paragon was liable under the two letters of credit for wrongful enjoinment, with separate hearings on damages to follow in the event that Paragon was found liable.

The hearing focused on three primary factual matters. First, many of the facts pertaining to the 1977 events at issue in the prior appeal decided by our Supreme Court were introduced. Second, evidence was introduced pertaining to the relationship of the various business entities involved in the litigation.

The third factual matter addressed at the hearing pertained to damages. Testimony disclosed that, subsequent to our Supreme Court's 1981 decision upholding Murrell's right to acquire the Smith and Magra capital stock, Murrell was unable to obtain a financing commitment from Michigan National Bank of Port Huron under the same loan terms as the 1977 commitment made by that bank. The 1977 loan commitment was for $2,445,000, consisting of two five-year term loans at ten percent per annum, totaling $1,385,000, and two revolving loans totaling $1,060,000, renewable annually at the bank's discretion with interest at the prime rate plus two percent. The original sales agreement negotiated between Murrell and Comerica for the sale of Smith and Magra capital stock was dated March 10, 1977, and approved by the probate court. The purchase was to be made on a

cash basis. In 1981, Murrell, in view of his inability to obtain the 1977 loan terms from Michigan National Bank of Port Huron, negotiated with Comercia to pay for Smith and Magra stock partially in cash and partially by executing secured notes. On December 21, 1981, Murrell and Comerica entered into a "first amendment to agreement of sale." The selling price of $2,649,728.25 was the same as that originally agreed to by Comerica and Murrell in the original agreement. The amended agreement required that Murrell execute a secured five-term note with interest of thirteen percent per annum in the principal amount of $1,961,728.25. Other payment terms included cash and noninterest-bearing notes. Other negotiated terms included an indemnity clause, profit-sharing clause, a personal guarantee on the part of Murrell, and a release clause. The sale closed on January 19, 1982.

Murrell's damage claim was based on the expectation that the sale should have closed by June 30, 1977. By comparison, Comerica's damage claim was based on the theory that, but for the preliminary injunction being obtained by Paragon, the sale would have closed during the week of November 7, 1977. Damages in excess of $1,000,000 were claimed by Comerica, based on a theory that, had the sale closed, the Prichard estate would have had cash to invest and could have avoided certain expenses. The most significant claim was for $966,065 which represented alleged investment income which would have been earned between November 9, 1977, and January 31, 1982. Other claims included $167,000 for accrued interest on the estate's tax liability, a claim exceeding $30,000 for services provided by Comerica concerning Smith and Magra affairs, and interest exceeding $30,000 paid on funds borrowed to pay a widow's allowance.

On April 15, 1983, the circuit court held that Murrell was wrongfully enjoined by Paragon from consummating the purchase of the Smith and Magra stock and could recover damages. Comerica, as executor of Prichard's estate, however, was estopped from recovering damages, because it induced Paragon to enter into the stock purchase agreement and thereby put Paragon into a position on which it relied to its detriment. On December 12, 1983, judgment was entered awarding $609,606.53 in damages to Murrell. A judgment denying relief to Comerica was entered the same day.

On December 19, 1983, Paragon filed an appeal with this Court. On December 22, 1983, the circuit court entered an order requiring the proceeds of the letters of credit in favor of Murrell to be deposited with an escrow agent during the pendency of this appeal or until further order of the circuit court.

On December 29, 1983, Comerica filed a claim of appeal with this Court. Both appeals were dismissed in April, 1984, for lack of jurisdiction. Comerica and Paragon's delayed applications for leave to appeal were also denied. On November 30, 1984, our Supreme Court vacated this Court's orders and remanded the Paragon and Comerica appeals to this Court for consideration as on leave granted. 419 Mich 964 (1984).

II

The first issue we address is whether the circuit court erred as a matter of law in finding that Murrell was entitled to recover damages from Paragon for "wrongful enjoinment." When a court grants a preliminary injunction it sits in equity. *Van Buren Public School Dist v Wayne Circuit*

*Judge,* 61 Mich App 6, 15; 232 NW2d 278 (1975). "The object of preliminary injunctions is to preserve the status quo, so that upon the final hearing the rights of the parties may be determined without injury to either." *Gates v Detroit & M R Co,* 151 Mich 548, 551; 115 NW 420 (1908). The injunction itself must be specific and narrowly construed. *Walters v Norlin,* 123 Mich App 435, 440; 332 NW2d 569 (1983), see GCR 1963, 718.9, now MCR 3.310(C). However, the injunction is always subject to modification or dissolution if the facts merit it. *Opal Lake Ass'n v Michaywe Ltd Partnership,* 47 Mich App 354, 367; 209 NW2d 478 (1973). Under GCR 1963, 718.3, now MCR 3.310(D), which was applicable during the times relevant to this appeal, the court could order that the party requesting the injunction provide security.

The preliminary injunction at issue expressly stated that its purpose was to "preserve and protect the *status quo ante* in these proceedings pending the further order of and final disposition of these proceedings by the court, and that an appropriate security should be set for the benefit of the appellee and the executor herein; . . . ." The injunction stated that letters of credit should indemnify Ronald C. Murrell, and Murrell Enterprises, Inc., and Detroit Bank & Trust Company, executor, for any costs or damages that they incurred or suffered if either party was found to be or to have been wrongfully enjoined. The letter of credit obtained by Paragon as security were issued by Michigan National Bank of Detroit and guaranteed by GLS Lease Co.

At issue in this appeal are the nature of the proceedings brought by Murrell on the letter of credit, the meaning of the phrase "wrongfully enjoined" in the court rule and preliminary injunction, what defenses are available to Paragon,

and what standards apply in determining the amount of damages.

At common law, it was a general rule that there was no liability in tort from damages caused by wrongfully suing out an injunction, unless circumstances gave rise to a cause of action for malicious prosecution. 42 Am Jur 2d, Injunctions, § 359, pp 1171-1172. The word "wrongful," as used in the context of injunctions, has been considered by federal and state courts to mean the issuance of the injunction by a court in error or when it ought not to have been issued. See e.g. *Hubbard Broadcasting, Inc v C A Loescher,* 291 NW2d 216 (Minn, 1980), *Coyne-Delany Co, Inc v Capital Development Bd of the State of Illinois,* 717 F2d 385, 391 (CA 7, 1983), and *Cappaert Enterprises v Citizens & Southern International Bank of New Orleans,* 564 F Supp 214 (ED La, 1983).

In Michigan, statutes or court rules permit a trial court to issue an injunction conditioned on the party requesting the injunction giving security for damages caused by "wrongful" enjoinment. GCR 1963, 718.3(1). The action on the security, often in the form of an "injunction bond," is treated as an action on a contract and not a proceeding in equity, although the allowance of damages has been treated in some courts as resting on equitable principles. *Coyne-Delany Co, Inc, supra,* p 391, and *Epstein v Graff,* 231 Mich 232; 203 NW 836 (1925) (the remedy for damages occasioned by an injunction is an action upon the bond).

In Michigan, court rules establish a summary proceeding where a party wrongfully enjoined may recover damages on a bond or other security. *Independence Twp v The Stolaruk Corp,* 100 Mich App 209; 298 NW2d 706 (1980). GCR 1963, 525,

now MCR 3.604(I), which establishes the proceeding, states:

> In every action in which a bond or other security for costs, supersedeas, or other purposes has been posted, judgment may be entered directly in the action against the bondsman or other security on motion and a showing that the condition has occurred giving rise to the liability on the bond or to the forfeiture of the security. In each instance notice of the hearing on the motion for judgment shall be given to the bondsman or the owner of the security. If in subsequent proceedings in the action on appeal or otherwise, it is held that facts exist indicating that the bondsman is not liable or that the security should not have been forfeited, the court in the action may order restitution of all moneys paid or securities forfeited.

Murrell filed a motion to recover damages under GCR 1963, 525, on June 30, 1981. The "condition" giving rise to Paragon's liability, as provided for in the court rule and preliminary injunction, was a showing that Murrell was "wrongfully enjoined." Paragon's position is that its good faith in filing its appeal to the circuit court from the probate court in the underlying dispute between the parties (regarding whether Murrell or Paragon had a superior right to purchase the capital stock of Smith and Magra) must be considered. The operative term in the court rule, GCR 1963, 718.3(1), the preliminary injunction order and the letter of credit seems to be "wrongful."

Since the merits of the underlying controversy between the parties in this case was decided in favor of Murrell, it appears from these principles that a showing was made that Murrell had been wrongfully enjoined. However, since the interpretation of a court rule was involved, general principles of construction should also be considered. In

construing a court rule, principles of statutory construction apply. *Issa v Garlinghouse,* 133 Mich App 579, 581; 349 NW2d 527 (1984). A statute should be given a reasonable construction given its purpose and the object sought to be accomplished. *King v Director of the Midland Co Dep't of Social Services,* 73 Mich App 253, 258; 251 NW2d 270 (1977). A statute should be construed according to the ordinary and approved usage of the language. *Dep't of Treasury v Psychological Resources, Inc,* 147 Mich App 140, 145; 383 NW2d 144 (1985). Resort to dictionary definitions is an appropriate method of achieving this result. See *Mobil Oil Corp v Dep't of Treasury,* 422 Mich 473, 484; 373 NW2d 730 (1985), reh den 422 Mich 1264 (1985). "Wrongful" is defined in *The American Heritage Dictionary of the English Language* (New College Ed, 1981) as follows:

> 1. Wrong; injurious, unjust.
> 2. Contrary to law; unlawful, illegal.

"Wrongful" is defined in Black's Law Dictionary (Rev 4th ed) as follows:

> Injurious, heedless, unjust, reckless, unfair. Infringement of some right.

The plain language of GCR 1963, 718.3(1) indicates as its object compensating a party for costs and damages sustained as a result of an injunction, which, based on the determination made on the merits of the underlying controversy between the parties, should not have been issued at all. The circuit court here correctly considered the above principles in construing the meaning of "wrongful" in its opinion.

Having concluded that the enjoinment was

wrongful, the next issue is whether any defenses were available to Paragon. It is generally considered that good faith is no defense. See 43A CJS, Injunctions, § 325(c), p 726, *Hubbard Broadcasting, Inc, supra,* and *Coyne-Delany Co, Inc, supra,* p 392. An exception exists when recovery is sought in excess of an injunction-bond amount. The majority rule limits recovery to the bond amount, absent a showing that the preliminary injunction was issued maliciously or in bad faith. This view is compatible with public policy encouraging ready access to the courts. The minority rule permits a party to recover all damages arising from a wrongful injunction. See *Tracy v Capozzi,* 98 Nev 120; 642 P2d 591 (1982), and Anno., 30 ALR4th 273. Since, as previously discussed, a party can seek modification of a preliminary injunction, and thus request an increase in the security, we prefer the majority view.

The security required by the preliminary injunction in this case in regard to Murrell was a letter of credit in the amount of $500,000. The letter of credit allowed for no greater recovery. Consequently, $500,000 was the maximum amount that Murrell should have been entitled to recover by motion under GCR 1963, 525. The trial court clearly erred in awarding damages in excess of $500,000.

Finally, connected with this issue is the issue of what standards apply in awarding damages under GCR 1963, 525 for wrongful enjoinment. The majority approach in the federal courts is to award damages, unless there is a good reason not to require the party to pay damages in a particular case. See *Coyne-Delany Co, Inc, supra,* p 391. The object of a damage award is to compensate the party wrongfully enjoined for damages proximately resulting from the injunction. *Hubbard*

*Broadcasting, Inc, supra.* Under the "avoidable consequences doctrine" applicable to contracts, parties cannot recover for damages which could have been avoided by reasonable effort or expenditure. The party seeking damages has a duty to mitigate damages. Additionally, benefits arising from the breach must be deducted from damages otherwise payable. See *Tel-Ex Plaza, Inc v Hardees Restaurants, Inc,* 76 Mich App 131, 134-135; 255 NW2d 794 (1977), lv den 402 Mich 832 (1977). The circuit court's written opinion indicates that these principles were considered. We conclude that the circuit court erred in awarding damages and costs in excess of $500,000. Although the court's oral opinion is somewhat unclear, the circuit court's finding of wrongful enjoinment was correct and is affirmed.

### III

We next consider whether the circuit court erred in its computation of the amount of damages sustained by Murrell. A circuit court's factual findings are reviewed under the "clearly erroneous" standard. MCR 2.613(C). The pertinent inquiry is whether the damages proximately resulted from the injunction. The damage award was based on three factors: (a) out-of-pocket costs; (b) increased financing costs; and (c) lost profits.

### A

#### OUT OF POCKET COST OF $61,541.79

The award represented the costs incurred by Murrell in preparing to close on the original 1977 sales agreement for Smith and Magra stock and in obtaining a financing commitment for the purchase. Costs included a real estate appraisal, tax

advice from attorneys, loan negotiation and preparation, financial projections prepared by accountants in connection with the loan, and attorneys fees related to Interstate Commerce Commission requirements.

The basis of the circuit court's award was its finding that the above expenses were legitimate and would have been incurred again at the time of closing in 1982. The general rule is that there is no liability for damages sustained before the injunction was granted. 42 Am Jur 2d, Injunctions, § 367, p 1182. Additionally, neither the preliminary injunction nor the letter of credit expressly required that Paragon pay damages for costs incurred prior to the injunction as a condition for obtaining the injunction. Thus, we find that the circuit court clearly erred in awarding preinjunction costs to Murrell. The $61,541.79 award is reversed.

B

INCREASED FINANCING (INTEREST) COSTS OF $210,185

This award represents the difference between the interest costs involved in a loan commitment procured by Murrell from Michigan National Bank of Port Huron in 1977 and the actual loan package Murrell procured from Comerica under the December, 1981, amended agreement. The stock sale closed on January 19, 1982. The award was based on the testimony of Murrell's expert witness, James Matthews, who calculated the interest difference based on an assumption that $1,911,682.25 would have been borrowed by Murrell in both 1977 and 1982 in the form of interest-bearing notes.

The problem in this case is that two different loan packages, separated in time by approximately

four and one-half years, are being compared. The terms of the 1982 loan package are clear. The terms of the 1977 loan package, containing two revolving loans subject to annual renewal at the discretion of the bank, are more speculative in nature. Matthews' testimony indicated that the 1982 interest costs would be higher than the 1977 interest costs. The circuit court's decision to accept his testimony and calculations as the "more logical and accurate figure" for calculating damages was not clearly erroneous.

C

### LOST PROFITS OF $277,698

This award represents a dividend actually paid out to Comerica, as the executor of the Estate of Prichard. It was computed based on fifty percent of Smith and Magra's net income for the period from July 1, 1977, the approximate date that Murrell anticipated closing under the original agreement, and the actual date of closing under the amended agreement. The original agreement provided that Smith and Magra profits would be split equally between Comerica, as the executor of the Estate of Prichard, and Murrell "commencing as of January 1, 1977, and continuing to the date of closing." The original agreement also specified that "time is of the essence and the sale shall be completed not later than June 30, 1977." The amended agreement, dated December 21, 1981, provided that "because of certain litigation the closing of this transaction was delayed and, as a matter of compromise between the parties hereto, they agree to share in the profits . . ." The circuit court determined that the clause represented a compromise agreement and served to keep the agreed-to interest terms lower. A review of Paragon's arguments

regarding this portion of the award does not convince us that any error has been made. In view of the terms of the original agreement and Ronald Murrell's testimony on when he anticipated closing, the circuit court's use of July 1, 1977, to compute lost profits was not clearly erroneous.

### D

#### THE DURATION OF THE INJUNCTION AND ITS RELATIONSHIP TO DAMAGES

Paragon, relying on case law preceding the 1963 General Court Rules, contends that the preliminary injunction was dissolved by its own terms on December 30, 1977, the date the circuit court affirmed the probate court's orders. The circuit court, relying on GCR 1963, 802.2(3), now MCR 7.208, rejected Paragon's claim. It is clear from the language of GCR 1963, 802.2(3) that the preliminary injunction issued by the circuit court in this case remained in effect and could have been enforced by Paragon during its appeals to this Court and to the Supreme Court. We find no error in the circuit court's determination that the preliminary injunction remained in effect during the appeal period. The circuit court did not clearly err in awarding damages based on events occurring subsequent to 1977 which were caused by the injunction. No failure to mitigate damages was shown.

### IV

Paragon next argues that the circuit court erred in computing the statutory prejudgment interest awarded to Murrell. The sole issue raised by Paragon was what date should have been used by the circuit court as the starting date in computing prejudgment interest. Paragon contends that the

starting date should be May 7, 1982, the date Murrell first moved for damages under the injunction, instead of January 11, 1982, the date Murrell moved to dissolve the injunction. May 7, 1982, was the date of Comerica's "motion for judgment against security in the form of letter of credit." According to the circuit court's judgment, the injunction was dissolved on January 11, 1982. On January 19, 1982, Murrell and Comerica closed their stock sales transaction. Thus, it can be seen that Paragon's claim of error is factually incorrect. The circuit court's prejudgment interest award computations were expressly based on MCL 600.6013; MSA 27A.6013 and are correct.

V

In Comerica's appeal to this Court the only issue raised is whether the circuit court erred in finding that Comerica was equitably estopped from recovering damages from Paragon under the letter of credit. Basic principles applicable to this issue are discussed in section II, *supra.* The pertinent inquiry is whether there was good reason to apply the doctrine of equitable estoppel to prevent Comerica from recovering damages proximately resulting from the preliminary injunction. Our Supreme Court has held that equitable estoppel rests in broad principles of justice. *Mertz v Mertz,* 311 Mich 46; 18 NW2d 271 (1945). Consequently, parties who successfully maintain one position in a lawsuit have been barred from taking an inconsistent position in a subsequent lawsuit on the same actual issue. *Burgess v Holder,* 362 Mich 53; 106 NW2d 379 (1960); *Mertz v Mertz, supra.* The doctrine is applicable to actions in both law and equity. *Stone Road Dairy Co v Humes,* 220 Mich 57; 189 NW 883 (1922).

Since equity is involved, the standard of review is de novo, with no reversal unless the trial court's findings were clearly erroneous or this Court concludes that it would have reached a different result had it occupied the court's position. *Calvary Presbyterian Church v Presbytery of Lake Huron of the United Presbyterian Church in the United States of America,* 148 Mich App 105; 384 NW2d 92 (1986), lv den 425 Mich 863 (1986).

We believe that the circuit court clearly erred in ruling that Comerica was equitably estopped from recovering under the letter of credit. The circumstance relied on by the circuit court in finding an estoppel was Comerica's act of entering into a contract with Paragon for the sale of Smith and Magra capital stock. The court reasoned that this action placed Paragon into a position upon which it relied to its detriment. Although it is true that it was Comerica's contract with Paragon which gave Paragon a basis for believing that it, and not Murrell, had a superior right to acquire the Smith and Magra capital stock from the Prichard estate, this did not necessarily mean that Paragon was entitled to a preliminary injunction while pursuing that claim through the appellate proceedings. The record contains no facts showing acts on the part of Comerica which would have induced Paragon to seek the injunction. To the contrary, the record indicates that, following the probate court's order finding Murrell's right to acquire Smith and Magra capital stock superior in an order dated February 28, 1977, Comerica, as the executor of the Estate of Prichard, entered into the original March 10, 1977, agreement governing its sale of the Smith and Magra stock to Murrell. Probate court approval of the sale agreement was obtained. It was Paragon which sought to enjoin the sale by filing a motion for an injunction on June 22, 1977.

The preliminary injunction order was entered on August 23, 1977.

Comerica, therefore, was entitled to damages proximately caused by the injunction. Paragon was entitled to and apparently chose to file a separate claim against Comerica based on a breach of contract theory. Comerica should be awarded damages and costs, not to exceed the letter of credit amount of $200,000. Because the circuit court made no factual findings on this damage issue, the appropriate relief is to grant a remand to the circuit court to decide the issue of damages.

Affirmed in part, reversed in part and remanded for proceedings consistent with this opinion. We retain no jurisdiction.