**CORPORATION OF the PRESIDENT OF the CHURCH OF JESUS CHRIST OF LATTER–DAY SAINTS, a corporation sole, Plaintiff and Respondent,**

v.

**Douglas A. WALLACE, Defendant and Appellant.**

**No. 15106.**

Supreme Court of Utah.

Jan. 11, 1978.

Brian M. Barnard, Asst. Atty., Salt Lake City, for defendant and appellant.

Douglas A. Wallace, pro se.

Allen M. Swan, Salt Lake City, for plaintiff and respondent.

MAUGHAN, Justice:

Plaintiff filed an action seeking a permanent injunction, and in the interim a temporary restraining order, to restrain defendant from interrupting religious services conducted by the Church of Jesus Christ of

Latter-Day Saints, hereinafter referred to as the church. The court granted, ex parte, a restraining order. It ordered defendant not to interfere with the religious services being conducted by the church, from September 30, 1976, to October 4, 1976. Defendant was further restrained during the aforementioned time from entering the edifice on the property of the church, wherein the services were being held.

Defendant filed an answer and a counterclaim. Upon motion of plaintiff, defendant's counterclaim was dismissed on the ground it failed to state a claim upon which relief could be granted. The trial court further found the restraining order was proper and in accordance with law. The judgment is affirmed. Costs are awarded to plaintiff.

Plaintiff, a corporation sole, holds title to the property of the church, including an edifice known as the Tabernacle, situated on Temple Square in Salt Lake City, Utah. Semi-annually the church holds a religious meeting called a general conference for a period of three days. These services are conducted in the Tabernacle and are communicated by radio and television throughout the world. These conferences are strictly religious in character and are for the purpose of giving doctrinal instruction to regional leaders and members of the church. During the spring conference of 1976, defendant with two associates interfered with the meeting. Specifically, he entered the premises and proceeded down the aisle, announcing, "Make way for the Lord." When the security personnel confronted him, he stated loudly: "Don't touch the Lord." It was necessary to eject him forcibly from the premises.[1]

Later, defendant notified the leadership of the church he intended to hold a trial during the autumn conference, to try the President of the church for malfeasance in office. The church received such communications announcing defendant's intention to disrupt the autumn conference, on August 11 and September 15, 1976.

The foregoing facts were set forth in plaintiff's verified complaint, which was filed September 27, 1976. The temporary restraining order was issued September 28, 1976, and was effective for ten days. The order recited specifically the instance of defendant's prior interference with the spring conference, and his threats to disrupt the autumn conference. The court found the disruption and interference would cause the church immediate and irreparable damage, and therefore granted the order for good cause.

In his counterclaim, defendant alleged the temporary restraining order was wrongfully issued. Also, that plaintiff's direct and sole purpose was to prevent and limit defendant from the exercise of his religion and religious beliefs; and from the exercise of his First Amendment rights of free speech and assembly. Defendant further alleged that, as a direct and proximate result of plaintiff's actions, he was prevented from exercising and practicing his religious beliefs and fulfilling his missionary beliefs. Defendant prayed for $100,000 general damages and $100,000 punitive damages.

On appeal, defendant contends there were certain procedural infirmities in the issuance of the restraining order. First, he contends that under 65A(c), U.R.C.P., it is mandatory an applicant give security in some amount, upon issuance of a restraining order. Plaintiff, here gave no security.

65A(c), U.R.C.P. provides:

> Except as otherwise provided by law, no restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. . . .

This rule is substantially similar to the Federal Rule 65(c). The purpose of the security provision in the federal rule is to

---

1. Defendant had been excommunicated from the church because of a doctrinal disagreement, prior to the spring conference of 1976.

enable a restrained party to secure indemnification for the costs, usually not including attorney's fees, and pecuniary injury that may accrue during the period in which a wrongfully issued equitable order remains in effect.[2]

It has been held, however, that the court may dispense with security altogether if grant of the injunction carries no risk of monetary loss to the defendant.[3]

In *Continental Oil Company v. The Frontier Refining Company*,[4] the court stated that under Rule 65(c), the trial judge has wide discretion in the matter of requiring security, and if there is an absence of proof showing a likelihood of harm, certainly no bond is necessary.

Defendant further contends the facts set forth in the verified complaint do not show immediate and irreparable injury as required under 65A(b), U.R.C.P. The statements of the court in the *Central Presbyterian Church v. Black Liberation Front*[5] are an appropriate response to both of defendant's claims of procedural irregularity.

The defendants by their conduct have given every indication that if not restrained from their acts, they will continue to disrupt the services of the Central Presbyterian Church. The plaintiffs have no adequate remedy at law and they are entitled to injunctive relief for the purpose of protecting their right to religious worship and the peaceful use of their property, as guaranteed by the Constitution of the United States. The defendants, if they are restrained, will suffer no damage for the reason they have no rights under any conceivable stretch of the imagination to conduct themselves in the manner in which they did conduct themselves on June 15, 1969.

In *Kleinjans v. Lombardi*[6] the occupation by students of the chancellor's office threatened to interfere with the successful administration of the school. The court stated the injuries flowing from such interference were not susceptible to pecuniary valuation, and thus constituted a threat of irreparable injury under traditional equitable principles. The court further responded to the claim of defendants that they were exercising their rights under the First Amendment. It said defendants were engaged in conduct not speech, and their protest involved the occupation of the private office of a university official. Under such circumstances there could not be any good faith claim the area was open to the public, for the purpose of expressing dissident ideas. The court deemed such conduct clearly outside the scope of first amendment rights.

76–9–103(1), Utah Criminal Code, provides:

A person is guilty of disrupting a meeting or procession if, intending to prevent or disrupt a lawful meeting, procession, or gathering, he obstructs or interferes with the meeting, procession, or gathering by physical action, verbal utterances, or any other means.

In *State v. Chima*,[7] defendants urged a similar, predecessor statute was unconstitutional on the ground it interfered with the exercise of their rights under the First Amendment. This Court observed the Amendment certainly could not be interpreted to endow a religious fanatic with a constitutional right to disturb or break up the saying of Mass in the cathedral.

■ In regard to the potential criminal nature of defendant's acts in interfering with the spring conference, it should be observed:

. . . although equity will not enjoin an act merely because it is criminal, an injunction will issue where an individual property right is also threatened or there are other appropriate circumstances. In such circumstances equity acts not

---

**2.** 11 Wright and Miller, Federal Practice and Procedure, § 2954, p. 523.

**3.** Ibid. 1976 Pocket Part, § 2954, p. 56.

**4.** CA 10th 1964, 338 F.2d 780, 782.

**5.** U.S.D.C. ED.Mo., ED, 1969, 303 F.Supp. 894, 898.

**6.** 52 Haw. 427, 478 P.2d 320 (1970).

**7.** 23 Utah 2d 360, 463 P.2d 802 (1970).

to enforce the criminal law but to protect the rights of the individual from irreparable injury. . . .[8]

 The trial court correctly ruled the temporary restraining order to be properly issued.

Defendant assigns error in the dismissal of his counterclaim.

A complaint does not fail to state a claim unless it appears to a certainty the plaintiff would be entitled to no relief under any state of facts, which could be proved in support of his claim.[9]

An analysis of defendant's counterclaim indicates a claim for damages based on the alleged tortious conduct of plaintiff in causing the wrongful issuance of a temporary restraining order.

It is the well-established general rule that there is no liability in tort for the damages caused by the wrongful suing out of an injunction, unless the circumstances give rise to a cause of action for malicious prosecution. The philosophy of the matter is that an error in granting an injunction is an error of the court, for which there is no recovery in damages unless it is sufficiently intentional to be the basis of a suit for malicious prosecution. . . .[10]

 In *Junction Irrigation Company v. Snow*[11] this Court ruled defendants' suit was neither upon the bond nor one in malicious prosecution; therefore, defendants were not entitled to damages, for losses sustained; because of the improvident issuance of an injunction. Authority was there cited showing an action will not lie for improperly suing out an injunction, unless it is alleged in the complaint as an

abuse of the process of the court through malice and without probable cause.[12]

There was no error in ruling defendant's counterclaim did not state a claim upon which relief could be granted.

ELLETT, C. J., and CROCKETT, WILKINS and HALL, JJ., concur.

**8.** *Kleinsjans v. Lombardi,* note 6, supra, at p. 323 of 478 P.2d.

**9.** *Christensen v. Lelis Automatic Transmission Service, Inc.,* 24 Utah 2d 165, 168, 467 P.2d 605 (1970).

**10.** 42 Am.Jur.2d, Injunctions, § 359, pp. 1171–1172.

**11.** 101 Utah 71, 74, 118 P.2d 130 (1941).

**12.** See 45 A.L.R. 1517, 1518; 43 C.J.S. Injunctions, § 281a, p. 1055; 11 Wright and Miller,

Federal Practice and Procedure, § 2973, p. 652; "The absence of a bond usually precludes an aggrieved party from recovering damages for the issuance of an injunction. There are exceptions to this general proposition, however. For example, even if no bond has been posted by plaintiff, he still may be liable for any unjust enrichment that has resulted during the period the injunction was in effect. In addition, plaintiff may be proceeded against on the basis of malicious prosecution."