In re the Marriage of Michelle
ZWIEBEL, Appellant–
Petitioner,

v.

Larry ZWIEBEL, Appellee–Respondent.

No. 34A05–9703–CV–107.

Court of Appeals of Indiana.

Dec. 17, 1997.

Rehearing Denied March 3, 1998.

Raymond C. Bower, Walton, for Appellant–Petitioner.

Mark A. Dabrowski, Kokomo, for Appellee–Respondent.

## OPINION

SHARPNACK, Chief Judge.

Michelle Zwiebel appeals the trial court's granting of Larry Zwiebel's motion for relief from the order increasing his child support obligation. Michelle raises three issues for our review, which we consolidate and restate as:

1) whether the trial court properly granted the motion for relief from judgment on the basis of fraud; and

2) whether the trial court erroneously ordered Michelle's counsel to pay opposing counsel's fees.

We affirm.

The facts most favorable to the judgment follow. Larry and Michelle were divorced on April 8, 1985. Michelle was awarded custody of their two minor children, J.Z. and T.Z., and Larry was ordered to pay $80.00 per week in child support. On March 15, 1989, Larry's child support obligation was increased to $100.00 per week. On December 7, 1995, Michelle filed a second petition to modify child support, and the trial court set a hearing on this matter for February 2, 1996. Following this hearing, the trial court increased Larry's child support obligation to $375.00 per week. Larry was not present at this hearing.

On June 21, 1996, Larry filed his motion for relief from judgment pursuant to Ind.Trial Rule 60(B) alleging, in part, "mistake, surprise, or excusable neglect" and "fraud, misrepresentation or other misconduct of an adverse party." Record, p. 58. Between August 29, 1996, and October 31, 1996, the trial court conducted a two day hearing on the motion. On January 10, 1997, at Michelle's request, the trial court entered its special findings of facts and conclusions thereon. In its order, the trial court granted Larry's motion for relief from judgment and vacated its order increasing Larry's child support. The trial court also struck Michelle's petition to modify child support as fraudulent and awarded Larry attorney's fees in the amount of $4072.50.

On February 18, 1997, Larry filed a motion for proceedings supplemental. The trial court set a hearing on this motion for March 20, 1997. On March 14, 1997, Michelle's counsel filed a motion for continuance. The trial court set a hearing for that motion on March 18, 1997. After conducting the hearing on March 18, the trial court granted the motion to continue the hearing on Larry's motion for proceedings supplemental until April 3, 1997. In response to Michelle's motion for continuance, Larry's counsel filed an objection, a motion to reconsider and a request for sanctions. On March 19, 1997, the trial court reversed its prior ruling granting Michelle's motion for continuance and scheduled Larry's motion to reconsider and request for sanctions for March 20, 1997. The trial court also reset Larry's motion for pro-

ceedings supplemental for the same time and date.

On March 20, 1997, the trial court heard argument on Larry's motion for proceedings supplemental and his request for sanctions. Thereafter, the trial court ordered Michelle's attorney to pay the sum of $575.00 to Larry's counsel as a sanction for knowingly providing false information in the motion for continuance. Michelle now appeals the trial court's granting of the motion for relief from judgment and the sanctions imposed upon Michelle's counsel.

## I.

First, we must determine whether the trial court properly granted Larry's motion for relief from judgment on the basis of fraud. Larry filed a motion for relief from the February 2, 1996, order increasing his child support. In his petition, he alleged that at the hearing on support modification, at which he was not present, Michelle fraudulently led the trial court to believe that both children were still living with her when, in fact, the eldest son, J.Z., had moved out of her home and was living with his former stepfather. On appeal, Michelle does not challenge any particular finding of the trial court, but maintains that Larry failed to establish by clear and convincing evidence that Michelle had perpetrated fraud upon the trial court.

The motion for relief from judgment is governed by T.R. 60(B), which provides in pertinent part:

"On motion and upon such terms as are just the court may relieve a party ... from an entry of default, final order, or final judgment, ... for the following reasons:

*     *     *     *     *     *

(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

*     *     *     *     *     *

The motion shall be filed ... not more than one year after the judgment, order or proceeding was entered or taken for reasons (1), (2), (3), and (4)."

T.R. 60(B).[1]

■ To demonstrate actionable misrepresentation, the party moving for relief must demonstrate that 1) the opposing party knew or should have known from the available information that the representation made was false, and 2) the misrepresentation was made with respect to a material fact which would change the trial court's judgment. *Freels v. Winston,* 579 N.E.2d 132, 135 (Ind. Ct.App.1991), *reh'g denied, trans. denied.*

■ The decision of whether to grant a motion for relief from judgment is within the sound discretion of the trial court. *Gipson v. Gipson,* 644 N.E.2d 876, 877 (Ind.1994). We will reverse that determination only when the trial court has abused its discretion. *Id.* When reviewing the trial court's determination, we will not reweigh the evidence. *Id.* We must affirm if there is any legal ground in the record supporting the judgment, even if the trial court provides erroneous reasons for its ruling. *First Bank of Madison v. Bank of Versailles,* 451 N.E.2d 79, 81 (Ind. Ct.App.1983). In addition to demonstrating one or more of the enumerated grounds set forth in T.R. 60(B), the petitioner must also demonstrate the existence of a meritorious defense to the judgment. *State Dep't of Natural Resources v. Van Keppel,* 583 N.E.2d 161, 163 (Ind.Ct.App.1991), *trans. denied.*

■ With respect to the allegation of fraud, the trial court extensively recited the evidence in its findings, which we summarize as follows. J.Z. moved out of Michelle's home approximately five months prior to the filing of her petition to modify support and has been living with his former stepfather, Les Cunningham. Michelle provided no financial support to J.Z. and Cunningham after J.Z. moved out. On or about August 28, 1995, approximately one month after J.Z.

1. Michelle also asserts that Larry's motion for relief from judgment was not timely because it was filed approximately four months after the order modifying child support. However, T.R. 60(B) allows for the filing of such motions based upon sections (1) through (4) within one year of the judgment. Because Larry's motion was based upon subsections (1) and (3), Larry's motion was timely.

left, Michelle applied for food stamps and affirmatively indicated on the application that J.Z. was not residing with her. Nevertheless, shortly after establishing her food stamp availability, Michelle filed her petition to modify child support. In the petition, Michelle alleged that she had custody of both children and that "the cost of living and providing for *them* has substantially increased." Record, p. 41 (emphasis added). At the modification hearing, Michelle again stated that she still had custody of both children and that the cost of providing for both children had increased substantially. In addition, the transcript of that hearing contains no indication that J.Z. was no longer living with Michelle.

At the hearing on the motion for relief from judgment, Michelle testified as follows in response to questions from Larry's counsel:

"Q. During the period of time from July, '95 until the hearing on February 2nd would you tell the Court what steps you took to support [J.Z.]?

A. There weren't any.

Q. So it is fair to say, Ma'am, that you were not supporting [J.Z.] on December 7th of 1995, is that fair?

A. Yes.

Q. And you weren't supporting your son on February 2, 1996 when you came into this Court and had a hearing, were you?

A. No.

Q. Yet you represented to the Court that the cost of providing for these children had increased enough that you needed a modification in support and asked for that modification based upon the fact that you had two children to take care of, correct?

A. Yes.

\* \* \* \* \* \*

Q. Was Mr. Bowyer aware of the fact that one of your sons wasn't living with you when that petition was filed?

A. Yes, Your Honor."

Record, pp. 409–411.

Based upon these findings the trial court concluded, in part, as follows:

"As established by the record, at the time of the filing of her Verified Petition to Modify Child Support, Michelle (Zwiebel) Cunningham was neither providing for nor financially supporting [J.Z.]. By asserting that she needed additional funds to care for [J.Z.], it is clear 1) that Petitioner knew or should have known from the available information that the representations made in the verified Petition and at the hearing on February 2, 1996, were false, and 2) that Petitioner made those misrepresentations with respect to a material fact which would change the trial court's judgment;

Petitioner's misrepresentations were crucial to her purpose and designed to cause the Court to issue an order affecting a substantial increase in support, an increase sought to pay for a child which the Petitioner was not then supporting. The Court did, in fact, issue such an order [increasing support]. . . .

12. In the instant case, the record establishes that Michelle (Zwiebel) Cunningham perpetrated a fraud upon the Court in leading the court to believe that she had the care and custody of, and was providing financially for, *both* children of the marriage, when, in fact, [J.Z.] had permanently vacated his mother's residence in the summer of 1995 and she affirmatively refused to provide [J.Z.] any financial assistance from the support paid by Larry Zwiebel, despite [J.Z.'s] request(s) therefore. . . ."

Record, pp. 224–225 (original emphasis).

Our own review of the record reveals that the trial court's findings are a true and accurate reflection of the evidence. We agree with the trial court that the evidence of Michelle's affirmative misrepresentation to the trial court is clear and convincing. Michelle, herself, admitted on the stand that she misrepresented these facts to the trial court. Michelle's attempts to point to evidence that she believed J.Z.'s absence to be temporary constitutes a request to reweigh the evidence, which we cannot do. *See Gipson*, 644 N.E.2d at 877. Thus, we conclude

that the trial court did not abuse its discretion in determining that Michelle and her counsel had committed a fraud upon the court. *See id.*

■ We further conclude that knowledge that J.Z. was not being supported in any way by Michelle would clearly affect the trial court's determination of the amount of support Michelle needed to support the children. *See Freels,* 579 N.E.2d at 135. As such, Larry asserts a meritorious defense to the child support modification order. *See State Dep't of Natural Resources,* 583 N.E.2d at 163. Therefore, we conclude the trial court properly granted the motion for relief from judgment on the basis of fraud.[2] *See* T.R. 60(B)(3).

## II.

■ The next issue raised for our review is whether the trial court abused its discretion when it ordered Michelle's counsel, Raymond C. Bowyer, to pay opposing counsel's fees as a sanction for his alleged misrepresentations with respect to his verified motion for continuance. Although Michelle neither makes a legal argument supporting her assertion that the trial court's order was erroneous nor does she cite any legal authority for her position, we choose to address the merits of the argument.

■ Indiana Trial Rule 11, which provides for the verification of motions, states, "[f]or a wilful violation of this rule an attorney may be subjected to appropriate disciplinary action." T.R. 11(A). Thus, the trial court has the discretion to impose sanctions where it determines that the verified motion contains information that the attorney knows to be false. The grant of a motion for sanctions rests in the sound discretion of the trial court. *Hudgins v. McAtee,* 596 N.E.2d 286, 289 (Ind.Ct.App.1992). An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts of the case. *Id.*

On February 19, 1997, Larry's counsel, Mark A. Dabrowski, filed his verified motion for proceedings supplemental. On that same day, the trial court entered an order requiring the parties to appear in court on March 20, 1997. On March 14, 1997, Bowyer filed a motion for continuance which stated, in part, as follows:

"2. That ... Raymond C. Bowyer ... has several other *previously scheduled* pending matters set for March 20, 1997, including a hearing in the Miami Circuit Court ... at 9:00 a.m., and hearings in the Cass Circuit Court ... at 11:30 a.m."

Record, p. 18 (emphasis added).

Dabrowski subsequently objected to this continuance, and the trial court set a hearing for the motion for continuance on March 18, 1997. At the hearing, Bowyer had the following dialogue with the trial court:

"Judge Jessup: ... If I remember your motion right, Mr. Bowyer, you said your conflict was set earlier, correct?

Mr. Bowyer: Your Honor, to the best of my knowledge and recollection, that is true....

Judge Jessup: All right. I have one question for each of you. Your question, Mr. Bowyer, is this matter was set on February 18th. Your Motion [for continuance] was filed on March 14th. Is there any reason for the late filing of the Motion: I don't mean late as in violation of a rule. I mean late just in relative terms.

Mr. Bowyer: Well, Your Honor, I suppose that there were different things that contributed to it. I believe that when I first put the matter on the calendar I really didn't notice that there was a conflict until some time later...."

Record, pp. 57–59. Following this hearing, Dabrowski filed an objection to the motion for continuance, a motion to reconsider, and a request for sanctions. Attached to this objection were Chronological Case Summaries which established that both hearings referred to by Bowyer in his motion for continuance had been set after February 18, 1997,

2. Although Michelle also argues that the trial court erroneously granted the motion for relief on the grounds of mistake, surprise, or excusable neglect, only one valid ground is required to sustain a motion for relief under T.R. 60(B). *See First Bank of Madison,* 451 N.E.2d at 81. Therefore, we do not address the merits of this argument.

rather than before. In addition, Larry's objection stated that "[Dabrowski] was advised by [an employee of the Cass Circuit Court] that on or about March 5, 1997, she did personally telephone Raymond C. Bowyer to confirm that March 20, 1997, at 11:30 a.m. was an available date and time for the hearing in the Cass County matter." Record, p. 24.

Based upon the allegations in Larry's objection to the motion for continuance, the trial court reset the hearing for proceedings supplemental and for Larry's request for sanctions for March 20, 1997. At this hearing, Bowyer argued that his motion for continuance did not represent that the two other matters had been scheduled prior to the date that the original hearing had been scheduled. It is further asserted on appeal that the trial court's interpretation of the motion is erroneous.

Regardless of the interpretation of the motion for continuance, when asked directly by the trial court during the hearing on the motion for continuance, Bowyer again specifically stated that the matters had been previously scheduled. We conclude that the evidence above demonstrates Bowyer knowingly misrepresented facts in his motion for continuance. As such, the trial court did not abuse its discretion in requiring him to pay the attorney's fees generated by the motion for continuance as a sanction. *See Hudgins,* 596 N.E.2d at 289.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

BARTEAU and STATON, JJ., concur.