NOBLE COUNTY et al., Appellants
(Plaintiffs below),

v.

Crystal ROGERS, Appellee
(Defendant below).

No. 57S03–0003–CV–218.

Supreme Court of Indiana.

March 27, 2001.

Phillip A. Renz, Diana C. Bauer, Miller, Carson, Boxberger & Murphy, Fort Wayne, IN, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Jon Laramore, Deputy Attorney General, Indianapolis, IN, Attorneys for Amicus Curiae State of Indiana.

Crystal Rogers, Cromwell, IN, Pro Se.

## ON PETITION TO TRANSFER

SULLIVAN, Justice.

After a court overturned a restraining order that a county building inspector had obtained against Crystal Rogers, she sought damages under a trial rule that awards costs and damages to those wrongfully enjoined by governmental entities. Both the trial court and the Court of Appeals held that Rogers could recover under the trial rule despite the immunity provisions of the Indiana Tort Claims Act. We hold that Rogers is not entitled to damages because the county's conduct was not wrongful for purposes of the trial rule.

*Background*

In November, 1996, Crystal Rogers began a renovation project on a house that she owned in an unincorporated area of Noble County. Rogers had hoped to add a second story to the home. However, a Noble County building inspector issued a stop work order on November 12, 1996, asserting that the project violated the Noble County Building Code because Rogers had not obtained a building permit. Rogers continued construction until the county obtained a temporary restraining order.

Rogers appealed the trial court's decision to the Court of Appeals, which reversed and dissolved the temporary restraining order. *Rogers v. Noble County By and Through the Noble County Bd. of Comm'rs*, 679 N.E.2d 158 (Ind.Ct.App. 1997), *transfer denied*. The court first held that the pertinent Noble County ordinances amounted to a "building code" under Indiana Code § 36-7-8-3 and not a

"housing code" under Indiana Code § 36–7–8–4. It then dissolved the temporary restraining order because such "building codes" do not apply to "private homes that are built by individuals and used for their own occupancy." Ind.Code § 36–7–8–3(d) (1998).

On remand, Rogers asserted that she was entitled to damages under Indiana Trial Rule 65(C). Her counterclaim sought compensation for the cost of finding another place to live while the restraining order was in place and for damage to the house caused by exposure to the elements. Noble County moved for summary judgment on the counterclaim, arguing that the Indiana Tort Claims Act precluded her recovery. The trial court denied summary judgment, but certified its order for interlocutory appeal.

The Court of Appeals held that Trial Rule 65 is procedural in nature and therefore trumped the conflicting provisions of the Tort Claims Act. *Noble County ex rel. Noble County Bd. of Comm'rs v. Rogers*, 717 N.E.2d 591, 596 (Ind.Ct.App.1999). We granted transfer, thereby vacating the Court of Appeals decision. *Noble County v. Rogers*, 735 N.E.2d 227 (Ind.2000) (table).

### Discussion

Rogers's primary contention in this appeal is that she is entitled to "costs and damages" under Indiana Trial Rule 65(C), which reads:

No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. No such security shall be required of a governmental organization, *but such governmental organization shall be responsible for costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.*

(emphasis added). Rogers argues that because the restraining order was lifted after her first appeal, Trial Rule 65(C) requires Noble County to pay for the costs and damages she incurred while the restraining order was in effect.

Noble County contends that the Trial Rule conflicts with the immunity granted to governmental entities by the Indiana Tort Claims Act ("ITCA"). *See* Ind.Code §§ 34–13–3–1 to § 34–13–3–25 (1998). Noble County argues that two of the specific immunity provisions of Indiana Code § 34–13–3–3 preclude the damages Rogers sought in her counterclaim:

A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from:

. . .

(5) the initiation of a judicial or an administrative proceeding;

(6) the performance of a discretionary function; . . . [1]

The parties ask us to resolve this apparent conflict by applying either the

---

1. Although not cited in Noble County's brief, two other subsections of Ind.Code § 34–13–3–3 are arguably invoked by these facts:
   (7) the adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment;

   (8) an act or omission performed in good faith and without malice under the apparent authority of a statute which is invalid, if the employee would not have been liable had the statute been valid . . .

Trial Rule or the ITCA to the exclusion of the other.[2] This posture puts into tension the powers of coordinate branches of our state government by asking us to ignore the pronouncement of one such branch. However, we have long held that "[i]f an act admits of two reasonable interpretations, one of which is constitutional and the other not, we choose that path which permits upholding the act." *Price v. State*, 622 N.E.2d 954, 963 (Ind.1993), *reh'g denied.*[3] *See also A Woman's Choice–East Side Women's Clinic v. Newman*, 671 N.E.2d 104, 111 (Ind.1996) (Dickson, J., concurring in result) (discussing "our overriding obligation to construe our statutes in such a way as to render them constitutional if reasonably possible"), *reh'g denied; Baldwin v. Reagan*, 715 N.E.2d 332, 338 (Ind.1999) ("If there is more than one reasonable interpretation of a statute, at least one of which is constitutional, we will choose that path which permits upholding the act.").

■ To this end, a proper construction of the word "wrongfully" in the Trial Rule resolves the conflict between the rule and the statute. We have never had the opportunity to determine the scope of wrongful conduct for governmental actors under T.R. 65(C). We now hold that their conduct is wrongful only to the extent that they have acted with such bad faith and malice that their actions undermine the authority of the court issuing the restraining order or injunction.[4]

■ This construction harmonizes the immunity provisions of the ITCA with our inherent power to sanction litigants for improper or untoward behavior in judicial proceedings. The ITCA expresses a legislative policy to protect the State's finances while ensuring " 'that public employees can exercise their independent judgment necessary to carry out their duties without threat of harassment by litigation or threats of litigation over decisions made within the scope of their employment.' " *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 452 (Ind.2000) (quoting *Indiana Dep't. of Corr. v. Stagg*, 556 N.E.2d 1338, 1343 (Ind.Ct.App.1990), *transfer denied*). To achieve these goals, the Legislature placed 20 categories of substantive behavior beyond the reach of tort suits. *See* Ind.Code § 34–13–3–3 (1998).

■ The Legislature's ability to immunize government actions knows few limits, but those limits are reached when immunity impinges upon the judiciary's

---

**2.** We note that the Illinois Court of Appeals has held that a statutory scheme of sovereign immunity overrides a trial rule that awards damages for a wrongfully obtained injunction. *See Village of Lake in the Hills v. Laidlaw Waste Systems, Inc.*, 160 Ill.App.3d 427, 112 Ill.Dec. 184, 513 N.E.2d 598 (1987).

**3.** When construing a trial rule, we employ such standard tools of statutory interpretation. *See Halsey v. Smeltzer*, 722 N.E.2d 871, 873 (Ind.Ct.App.2000) (citing *Johnson v. State*, 708 N.E.2d 912, 915 (Ind.Ct.App.1999), *transfer denied*), *transfer denied. Cf. Rumfelt v. Himes*, 438 N.E.2d 980, 983–84 (Ind.1982) ("Generally, the Rules of Trial Procedure are to be construed together and harmoniously if possible. However, as with statutes, a specif-

ic rule controls over a general one on the same subject matter.") (citations omitted).

**4.** Because the initial sentences of T.R. 65(C) deal solely with private parties and do not operate against the backdrop of the ITCA, we express no opinion as to what constitutes a "wrongfully" obtained restraining order or injunction in a purely private suit. *See, e.g., National Sanitary Supply Co. v. Wright*, 644 N.E.2d 903, 906 (Ind.Ct.App.1994) ("[W]e hold that the test for determining if a preliminary injunction was wrongfully issued [as between private entities] is not whether the injunction was ultimately dissolved but rather whether injunctive relief was warranted under the facts of the case."), *transfer denied.*

constitutional sphere. That is, while the Legislature may shield the State from substantive tort liabilities, it may not immunize the State from our power to sanction the attorneys and parties appearing before us. *See State v. Kuespert,* 411 N.E.2d 435, 438–39 (Ind.Ct.App.1980) (upholding power of the trial court to issue monetary sanctions against the State for discovery violations under Trial Rule 37). *Cf.* Ind. Const. art. VII, § 1 ("The *judicial power* of the State shall be vested in one Supreme Court, one Court of Appeals, Circuit Courts, and such other courts as the General Assembly may establish.") (emphasis added); *State ex rel. Indianapolis–Marion County Bldg. Auth. v. Superior Court of Marion County, Room No. 1,* 264 Ind. 313, 317, 344 N.E.2d 61, 64 (1976) ("Over the years, this Court, in its opinions, has circumscribed a segment of judicial authority and called it inherent and incidental. Courts are vested with an inherent power to order, in emergency situations, the removal of obstacles to the due administration of justice in the court.").[5] This power to sanction is a necessary precondition to the exercise of our independent judicial power:

> To deny a court the power to enforce obedience to its lawful orders against parties who have been subjected properly to its jurisdiction in the first instance, is to nullify its effectiveness as an independent branch of our government. The power of a court to enforce compli-

ance with its orders and decrees duly entered is inherent. No statutory sanction is needed. In both equity and law a court would be powerless to give effective relief were its arms tied by such requirements as relator asserts are necessary.

*State ex rel. Brubaker v. Pritchard,* 236 Ind. 222, 226–27, 138 N.E.2d 233, 235 (1956). *See also O'Conner v. State,* 178 Ind.App. 415, 382 N.E.2d 994, 998 (1978) ("In protecting this discovery process, the trial court has the inherent power to impose sanctions...."), *aff'd,* 272 Ind. 460, 399 N.E.2d 364 (1980). To protect the proper functioning of judicial proceedings, we also have imbedded this power in numerous court rules. *See, e.g.,* Ind.Trial Rule 11, Ind.Trial Rule 37, *Zwiebel v. Zwiebel,* 689 N.E.2d 746, 750 (Ind.Ct.App. 1997) ("[Under Trial Rule 11], the trial court has the discretion to impose sanctions where it determines that the verified motion contains information that the attorney knows to be false."), *transfer denied.* Similarly, the judicial power encompasses the ability to hold a litigant in contempt. *See, e.g., Meyer v. Wolvos,* 707 N.E.2d 1029, 1031 (Ind.Ct.App.1999) ("We have recognized the inherent judicial power to deal with contempt. No statutory sanction is needed as a court's power to enforce compliance with its orders and decrees duly entered is inherent."), *transfer denied; Crowl v. Berryhill,* 678 N.E.2d 828, 831 (Ind.Ct.App.1997) ("Time and time

---

**5.** Courts in other jurisdictions have also recognized such inherent authority:

> We have consistently upheld this Court's plenary power to control the course of litigation in the trial courts. The legislature recognizes these pertinent constitutional provisions which afford this Court full authority over rules of practice and procedure and the Courts inherent power to prescribe rules. The prescription of the practice and procedure attending the imposition of sanctions for the signing and filing of papers

with the courts is a procedural, not a substantive, matter. The legislature is prohibited from enacting statutes pertaining to such matter.

*Squillace v. Kelley,* 990 P.2d 497, 501 (Wyo. 1999) (citations omitted). *See also Cotner v. Hopkins,* 795 F.2d 900, 902 (10th Cir.1986) ("There is strong precedent establishing the inherent power of federal courts to regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances.").

again, Indiana appellate courts have recognized the inherent judicial power to deal with contempt.").

■ It is beyond question that this power extends to governmental attorneys and parties. "When the State enters the court as a litigant, it places itself on the same basis as any other litigant; subjecting itself to the inherent authority of the court to control actions before it, just as any other litigant." *State v. Blenden,* 748 So.2d 77, 88–89 (Miss.1999), *reh'g denied. See also State ex rel. Mass Transp. Auth. of Greater Indianapolis v. Indiana Revenue Bd.,* 146 Ind.App. 334, 337–38, 255 N.E.2d 833, 835–36 (holding state auditor in contempt for refusing to comply with a court order), *cert. denied,* 400 U.S. 877, 91 S.Ct. 117 (1970); *State ex rel. Indiana State Bar Assoc. v. Moritz,* 244 Ind. 156, 164, 191 N.E.2d 21, 25 (1963) (enjoining properly elected prosecutor from appearing in court because prosecutor had not been admitted to the bar); *Bangs v. Northern Indiana Power Co.,* 211 Ind. 628, 635, 6 N.E.2d 563, 566 (1937) (upholding power of trial court to award damages against mayor of Huntington for violating injunction; "The courts are clothed with the power, in such actions, to enter judgment of a coercive and remedial nature."). Other jurisdictions similarly uphold this judicial power in the face of misconduct by the government. *See, e.g., Nelson v. Steiner,* 279 F.2d 944, 948 (7th Cir.1960)

("The executive branch of government has no right to treat with impunity the valid orders of the judicial branch.").[6]

■ Therefore, our interpretation of the word "wrongfully" in the last sentence of T.R. 65(C) must balance the limitations of the ITCA with the judiciary's inherent power to sanction. So long as any damages granted under Trial Rule 65(C) are part and parcel of our sanctioning power, the constitutional conflict the parties point to is not at issue. Under this balance, a restraining order or an injunction obtained by the government is wrongful only when the government acts in bad faith or with malice so as to threaten the proper functioning of the court. This standard protects the legislative policy of immunizing discretionary government actions while preserving the courts' ability to control litigation. We therefore recognize that in those rare cases where this standard is met, T.R. 65(C) may operate as a sanction for the government's wrongful conduct despite the immunity otherwise granted by the ITCA.

■ Here, however, Rogers's counterclaim sought damages solely on the basis of the dissolution of the restraining order after her initial appeal, and no such bad faith is presented in the record. The dispute over the restraining order focused on the purely legal question[7] of the charac-

**6.** However, several Indiana cases have refused to award attorneys fees and costs against the government on the grounds that it is immune from "punitive" awards. *See, e.g., State v. Denny,* 273 Ind. 556, 557, 406 N.E.2d 240, 241 (1980) (refusing to shift costs under Ind.Appellate Rule 15(g)); *State v. Carter,* 658 N.E.2d 618, 623–24 (Ind.Ct.App.1995). These cases fall under the so-called American rule that a party may not shift the expense of bringing a lawsuit absent statutory authority. This refusal to allocate costs from *party to party* as a providential matter is a separate

analysis from a *court's* power to sanction litigants.

**7.** *Cf. Grand Trunk Western R. Co. v. Kapitan,* 698 N.E.2d 363, 368 (Ind.Ct.App.1998) (Darden, J., concurring in part and dissenting in part) ("Under Indiana Trial Rule 65(C), a party may recover damages, including attorney's fees, for a *wrongful* injunction. However, I do not believe the injunction in this case should be characterized as 'wrongful' so as to warrant an award of attorney fees [because the underlying issue] was a pure question of law ... I further believe such an award sets a

terization of a building code. *See Rogers v. Noble County By and Through the Noble County Bd. of Comm'rs*, 679 N.E.2d 158 (Ind.Ct.App.1997). The record and the two previous opinions reveal no hint that Noble County was motivated by anything other than a concern for safety. The trial court should have granted Noble County's motion for summary judgment as to Rogers's damage claims.

### Conclusion

Having previously granted transfer, thereby vacating the opinion of the Court of Appeals pursuant to Ind.Appellate Rule 11(B)(3), we remand this case for proceedings consistent with this opinion.

SHEPARD, C.J., and RUCKER, J., concur.

BOEHM, J., dissents with separate opinion in which DICKSON, J., concurs.

### BOEHM, Justice, dissenting.

I respectfully dissent. I do not believe that a suit for wrongful enjoinment implicates the Tort Claims Act. Rather, I would conclude that, under Trial Rule 65(C), a governmental entity seeking a preliminary injunction voluntarily assumes the obligation to pay costs and damages arising from a wrongful injunction. As a result, the claim by a person wrongfully enjoined is not one arising in tort and the Tort Claims Act, which bars only claims "in tort," does not preclude recovery of those costs and damages from a governmental entity. More importantly, the majority's approach does nothing to resolve the tension between the Tort Claims Act and Trial Rule 65(C), and ignores the point that this Trial Rule has been repeatedly enacted by the legislature, both before and after the Tort Claims Act. I also find no

support for the majority's conclusion that a governmental entity—or any other party to a lawsuit—acts "wrongfully" under Trial Rule 65(C) only where it acts in "bad faith" or with "malice" in invoking the power of the courts. It seems to me that the majority's rule is inherently self-contradictory. If the Tort Claims Act applies at all to a wrongful injunction, it provides protection to the governmental entity even for acts taken maliciously or in bad faith. Indeed, as explained below, the torts that the Act does immunize—malicious prosecution and abuse of process—have bad faith as an element. Thus, allowing suit only in the event of bad faith or malice, although possibly supportable as a policy matter, is a position incompatible with the Tort Claims Act and, in my view, amounts to rewriting the statute.

All parties agree that the resolution of this case turns on the interplay between the Indiana Tort Claims Act, *see* Ind.Code §§ 34–13–3–1 to 25 (1998), and Indiana Rule of Trial Procedure 65(C). Section 1 of the Tort Claims Act declares that the Act "applies only to a claim or suit in tort." I.C. § 34–13–3–1. The Act goes on to bar suit against governmental entities, including counties, under certain circumstances and for specific enumerated activities, two of which are "the initiation of a judicial or an administrative proceeding" and "the performance of a discretionary function." *Id.* § 34–13–3–3(5) & (6). Indiana Trial Rule 65(C), which requires a party seeking a preliminary injunction to post a bond, exempts a "governmental organization" from that requirement but provides that "such governmental organization shall be responsible for costs and damages." Thus, the issue is whether the Tort Claims Act bars a party who is the subject of a wrong-

---

bad precedent by punishing litigants for an error on the part of the court and, as such, augurs a chilling effect upon litigants.") (emphasis in original), *transfer denied.*

fully issued preliminary injunction from obtaining costs and damages from a governmental entity notwithstanding the trial rule. If obtaining a preliminary injunction that is ultimately vacated is a tort, then it is necessary to determine whether the statute or the trial rule governs. This was the inquiry of the Court of Appeals. If, however, Rogers' claim is not grounded in tort, the Tort Claims Act does not apply. The issue then becomes whether Trial Rule 65(C) standing alone is a sufficient basis to impose liability on Noble County for Rogers' costs and damages.

### A. The Remedy for a "Wrongful" Preliminary Injunction Is Contractual in Nature

Many states, either by statute or by rule of court, provide that a bond must be posted as a prerequisite to obtaining a preliminary injunction. Similarly, Federal Rule of Civil Procedure 65(C) provides for the issuance of security as a precondition to the grant of a preliminary injunction by a federal court. Indiana Trial Rule 65(C), like the trial rules of many other states, is modeled on the federal rule. Essentially, for the privilege of obtaining the expedited and, by definition, "preliminary" relief of a preliminary injunction, the plaintiff offers security in an amount that will adequately compensate the defendant if it is later determined that the interim relief was improperly granted. The enjoined party is a third-party beneficiary of the bond, which is a contract between the issuer and the party seeking the injunction. Accordingly, if recovery is sought on the injunction bond, it is essentially a contract claim. *Curtis 1000, Inc. v. Youngblade,* 878 F.Supp. 1224, 1277–78 (N.D.Iowa 1995) (citing Note, *Recovery for Wrongful Interlocutory Injunctions Under Rule 65(C),* 99 Harv.L.Rev. 828, 832–33 (1986)); *In re Estate of Prichard,* 169 Mich.App. 140, 425 N.W.2d 744, 748 (1988).

The federal rule is that a defendant wrongfully enjoined has no cause of action in the absence of a bond. *W.R. Grace & Co. v. Local 759,* 461 U.S. 757, 770 n. 14, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983). For the most part, the same has been true under state law as well. Note, *Interlocutory Injunctions and the Injunction Bond,* 73 Harv.L.Rev. 333, 343–44 (1959). The view of a claim for wrongful injunction as essentially contractual in nature is consistent with that result. If a party who has obtained an ultimately vacated injunction has committed a tort, the enjoined party would have a claim with or without a bond to secure payment. In addition, in many jurisdictions, and in Indiana until 1976,[1] the amount of recovery is generally limited to the amount of the bond. *Coyne–Delany Co. v. Capital Dev. Bd.,* 717 F.2d 385, 393–94 (7th Cir.1983); *State v. Zahourek,* 935 P.2d 74, 77 (Colo.Ct.App.1996), *aff'd,* 956 P.2d 556 (Colo.1998) (generally, no recovery is allowed unless the wrongfully enjoined party has a claim for malicious prosecution, restitution, or unjust enrichment). The sum of this appears to be that in the vast majority of jurisdictions recovery by a wrongfully enjoined party is viewed as fulfilling an undertaking by the party seeking

---

**1.** The Court of Appeals held, in *Howard D. Johnson Co. v. Parkside Development Corp.,* 169 Ind.App. 379, 389, 348 N.E.2d 656, 663 (1976), that recoverable damages in the wrongful injunction suit are not limited to the amount of posted bond. Prior to this decision, it appears that the rule in Indiana mirrored those of most other states—no recovery was possible without the bond. Consistent with this rule, a defendant who deemed the amount of the bond insufficient to cover potential damages could petition the court to increase the amount of the bond. *See, e.g., Jones Drilling Corp. v. Rotman,* 245 Ind. 10, 13, 195 N.E.2d 857, 859 (1964).

the relief to compensate for a wrongful injunction, not as compensating for a tort.

In Indiana, the law is less clear because our case law, like that of a few other states, allows both an action on the injunction bond as well as an action for damages beyond the amount of the bond. *See generally* 42 Am.Jur.2d Injunctions § 346 (2000). This is provided by statute in some jurisdictions. *E.g.,* Ill.Comp.Stat. 110/11–110 (1984). Indiana has permitted recovery beyond the amount of the bond without any statutory basis other than Trial Rule 65(C). *National Sanitary Supply Co. v. Wright,* 644 N.E.2d 903, 905 (Ind.Ct. App.1994), *trans. denied; Howard D. Johnson Co. v. Parkside Dev. Corp.,* 169 Ind.App. 379, 389, 348 N.E.2d 656, 663 (1976). And in Indiana, a wrongfully enjoined party may recover actual damages even if no security was demanded. *Wright,* 644 N.E.2d at 905. The sum of this is that a claim for "wrongful enjoinment" has a long history in Indiana, but has never been explicitly characterized as either a "tort" or a "contract" claim.

## B. *Governmental Liability for Wrongful Injunctions*

Many jurisdictions make special provision for preliminary injunctions by government agencies, but most simply exempt the government from the requirement to post a bond. Governmental entities are exempt under the federal counterpart to Trial Rule 65(C), but there is no provision in the federal rule purporting to impose liability on the government for a wrongful injunction. Many states also require no bond from a governmental entity before it may obtain a preliminary injunction, but make no express provision for liability. *See* 42 Am.Jur.2d Injunctions § 287 (2000). Indiana is in a distinct minority in its inclusion of express language calling for

government liability for a wrongful preliminary injunction.

Some authorities explain the government's exemption as based on a desire to spare the public the cost of posting a bond. *E.g., Provident Mgmt. Corp. v. City of Treasure Island,* 718 So.2d 738, 740 (Fla. 1998). Others state that it is because the government is presumed to be fiscally responsible in the event any loss is incurred. *Id.; Howard D. Johnson,* 169 Ind.App. at 389, 348 N.E.2d at 663; *cf. Juniata Foods, Inc. v. Mifflin County Dev. Auth.,* 87 Pa.Cmwlth. 127, 486 A.2d 1035, 1037 (1985) ("The bond requirement . . . is merely to insure a ready source for payment of damages if due."); *Norco Constr., Inc. v. King County,* 106 Wash.2d 290, 721 P.2d 511, 513–14 (1986) (government not required to post supersedeas bond because "the State treasury provides an adequate guaranty that the prevailing party will be able to collect the amount of the judgment").

Some states have concluded that the government is required to answer in damages even though it has not posted a bond. This rule is sometimes grounded in a statute or rule, and sometimes not. *See Corpus Christi Gas Co. v. City of Corpus Christi,* 46 F.2d 962, 963 (5th Cir.1931) (construing Texas statute providing that city "shall be liable in the same manner, and to the same extent, as if the bond, undertaking or security in ordinary cases had been duly given and executed"); *Provident Mgmt.,* 718 So.2d at 740; *cf. Norco Constr.,* 721 P.2d at 514 ("[A] party that is exempt from the bond requirement is in the same position as if it had posted a bond."). Other courts have concluded that in the absence of a bond, a party wrongfully enjoined simply has no recourse against a government entity, consistent with principles of sovereign immunity. *Village of Lake in the Hills v. Laidlaw Waste Sys.,*

*Inc.*, 160 Ill.App.3d 427, 112 Ill.Dec. 184, 513 N.E.2d 598, 602–03 (1987); *Orange County v. Heath*, 282 N.C. 292, 192 S.E.2d 308, 310 (1972). This issue has not been decisively determined under federal law. *But see SEC v. Unifund SAL*, 910 F.2d 1028, 1039–40 (2d Cir.1990) (suggesting that party seeking redress for wrongful injunction against federal entity may be without recourse altogether).

Only North Carolina and Illinois have explicitly discussed the interaction between sovereign immunity and a rule or statute that dispenses with the bond requirement for governmental agencies but explicitly provides for damages to the party wrongfully enjoined. For different reasons, both have concluded that a governmental entity is not liable for damages to the wrongfully enjoined defendant. Illinois by statute allows recovery for wrongful injunction at the hands of a private party whether or not bond has been posted. However, this claim for wrongful enjoinment has been deemed tort-like enough to implicate that state's immunity act if the government is the party seeking the injunction. *Laidlaw*, 112 Ill.Dec. 184, 513 N.E.2d at 601. In *Laidlaw*, the Illinois Court of Appeals concluded that villages were immune from a claim for a wrongful injunction under the state's tort immunity act. In so doing, it opted for a broader definition of tort, even though it acknowledged that "obtaining a wrongfully issued preliminary injunction is not technically a tort." *Id.*

I do not believe that reasoning applies under Indiana law. Traditionally, at common law, sovereign immunity was the norm in this state. However, by 1972, this Court had taken the last step in a series of decisions that had largely abrogated common law sovereign immunity. *Campbell v. State*, 259 Ind. 55, 63, 284 N.E.2d 733, 737–38 (1972) (abrogating sovereign immunity

for state); *Klepinger v. Board of Comm'rs*, 143 Ind.App. 155, 177–78, 239 N.E.2d 160, 173 (1968), *trans. denied* (abrogating sovereign immunity for counties); *Brinkman v. City of Indianapolis*, 141 Ind.App. 662, 231 N.E.2d 169 (1967), *trans. denied* (abrogating sovereign immunity for cities). Accordingly, the Tort Claims Act was enacted in 1974 in the context of an Indiana common law presumption against governmental immunity. Because the Indiana Act is in derogation of the common law, it is to be narrowly construed against a grant of immunity. *Mullin v. Municipal City of South Bend*, 639 N.E.2d 278, 281 (Ind. 1994). For this reason, I do not agree with the *Laidlaw* court's conclusion that nontortious activity is immunized by the Tort Claims Act, nor with the majority's unstated conclusion that Noble County has committed a "tort" as understood by the Act.

North Carolina took the view that the enactment of its procedural rule 65(C) did not waive government immunity for torts, apparently assuming that a suit for wrongful injunction is a tort, without saying so explicitly. *Heath*, 192 S.E.2d at 310. No express reliance was placed on North Carolina's Trial Rule 65(C), which, like Indiana's, specifically provides that no bond is required of a governmental entity, but that the governmental entity is nevertheless responsible for damages arising from wrongful enjoinment. *Id.* Because I believe that the recovery is essentially contractual in nature, I also find that authority unpersuasive.

### C. *Noble County Assumed the Liability Provided by Trial Rule 65(C)*

In my view, the basis upon which Rogers seeks recovery from Noble County is essentially contractual. There is no written contract between the two, and no bond creating a third party beneficiary relation-

ship. Nonetheless, by pursuing a preliminary injunction under Rule 65(C), Noble County accepted the arrangement imposed by the Rule and bound itself to reimburse Rogers for "costs and damages" if it was subsequently determined that the injunction should not have issued. *See* 1 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 4:2 (4th ed.1990) ("[B]roadly speaking, any conduct of one party from which the other may reasonably draw the inference of a promise, is effective in law as such a promise."); Restatement (Second) of Contracts § 19 (1981) ("The manifestation of assent may be made wholly or partly by written or spoken words or by other acts or by failure to act."); *see also Grove v. Charbonneau Buick–Pontiac, Inc.,* 240 N.W.2d 853, 856–57 (N.D.1976) (published rules of contest are a valid offer that, if acted upon, create a binding contract); *Lucas v. Godfrey,* 161 Wis.2d 51, 467 N.W.2d 180, 183–84 (Wis.Ct.App.1991) (same).

Although Rule 65(C) now directly creates the obligation to reimburse for a wrongful injunction, Indiana law has long required this result. Initially, this was accomplished by the requirement that a bond be posted. Indeed, the requirement that a party seeking an injunction reimburse a defendant who is wrongfully enjoined predates Rule 65(C) by nearly a century. In 1881, the legislature provided the code pleading procedure for obtaining injunctions. 1881 Ind.Acts ch. 38, § 183. This included the requirement that a party seeking an injunction enter into a "written undertaking, with surety ... for the payment of all damages and costs which may accrue by reason of the injunction." Ind. Code Ann. § 3–2107 (Michie 1968). Rule 65(C) became effective as of January 1, 1970, and Section 3–2107 was repealed effective the same day. Thus, Indiana law has long provided by either rule or statute

for damages to be recovered by a wrongfully enjoined party.

In 1970, the obligation of private parties to post a bond in order to obtain a preliminary injunction was retained in Trial Rule 65(C). The government was relieved of that obligation and instead the Rule itself provided for compensation to wrongly enjoined parties without the need for a bond. Indiana law has thus preserved and reaffirmed the longstanding rule that a party wrongfully enjoined may recover damages. A trial rule cannot override a statute on a point of substantive law. However, in 1969, Trial Rule 65(C) was adopted by this Court and was also enacted by the General Assembly. *See* Pub.L. No. 191–1969, § 1, 1969 Ind.Acts 661. It has been reenacted twice since that time, both subsequent to the enactment of the Tort Claims Act in 1974. Ind.Code § 34–5–1–6 (1984); Ind. Code § 34–8–2–2 (1998). Presumably this belt and suspenders approach was designed to meet precisely the point that some provisions of the trial rules verge or encroach on substantive law. The 1970 changes merely replaced the bond requirement, which plainly directed a contractual obligation of the governmental entity with a simple requirement that the entity reimburse directly. Basic contract principles and the doctrine that statutes are to be construed in harmony if possible lead me to conclude that the action for "wrongful injunction" is not a tort within the meaning of the Tort Claims Act. In my view, if the legislature wishes to change that rule of substantive law, it may do so, but the laws on the books do not provide the immunity Noble County claims.

### D. *The Policy Considerations Are for the Legislature to Resolve*

Noble County urges that considerations of public policy require immunity for a governmental entity from liability for an

ultimately unsuccessful preliminary injunction. The State, as amicus curiae, urges that the "as-yet-undefined threat of damage awards against government officials and agencies seeking injunctive relief will hamper enforcement efforts in areas such as environmental protection, health code enforcement, fire and building safety, and workplace safety."

Equally compelling public policy concerns favor allowing the wrongfully enjoined defendant to recover against the government. The requirement of posting bond or alternatively undertaking exposure to damages encourages private parties and the governmental entity alike to be cautious before invoking the extreme remedy of an injunction based on a hastily developed and sometimes incomplete record. Moreover, the "threat of damage awards" is not necessarily "as-yet-undefined." Anticipating Rogers' damages would have been unproblematic. Rogers was living with her family in a house with no roof. It was obvious that she would be required to find another place to live during an adjudication on the merits. That is precisely what happened after the tarpaulin covering her house was ripped away during high winds and brought down a power line. To be sure, taxpayers will shoulder the burden of any damage awards against the government. But the countervailing concern is that denying damages requires a single citizen to bear the loss even if proven correct. Trial Rule 65(C) was adopted by this Court and also enacted by the General Assembly. It resolved this debate in favor of distributing the loss among the taxpayers of the governmental unit rather than letting it fall on a single unfortunate citizen. If the legislature wishes to change that balance, it can do so. Under the current legal regime, however, I believe Rogers is entitled to recover as the Rule provides.

### E. *A "Wrongful" Preliminary Injunction Does Not Require Malice or Bad Faith*

"Wrongful" injunction has uniformly been found to mean "erroneous," not "malicious," and the error is by the court, not the party seeking the injunction. The majority concludes that the proper interpretation of "wrongful" under Rule 65(C), as applied to governmental entities, would include only preliminary injunctions sought maliciously or in bad faith. As a preliminary matter, I would note that there is no basis for this conclusion in the plain language of the Rule, which makes no distinction between governmental and private parties in this respect. As the majority notes, a trial rule is subject to standard rules of statutory construction. *Noble County v. Rogers*, 745 N.E.2d 194, 197 n. 3 (Ind.2001). I see no basis for the proposition that the wrongfulness of an injunction varies depending on the identity of the party seeking the injunction. More importantly, the majority's view of the Rule runs counter to the common and longstanding understanding of the law of preliminary injunctions.

The general rule at common law is that, in the absence of malicious prosecution or abuse of process, a party is not liable in tort for the wrongful issuance of a preliminary injunction. *Sneakers v. Cobb County*, 265 Ga. 410, 455 S.E.2d 834, 836 (1995); *Thayer Co. v. Binnall*, 326 Mass. 467, 95 N.E.2d 193, 201 (1950); *Mayor of Lansing v. Ku Klux Klan*, 222 Mich.App. 637, 564 N.W.2d 177, 180–81 (1997); *State ex rel. Douglas v. Ledwith*, 204 Neb. 6, 281 N.W.2d 729, 734–35 (1979); *Church of Latter Day Saints v. Wallace*, 573 P.2d 1285, 1288 (Utah 1978); 42 Am.Jur.2d Injunctions § 337 (2000). Thus, the prevailing authority on this matter is that a "wrongful" injunction, on the one hand, and "abuse of process" and "malicious prosecu-

tion," on the other, are wholly separate concepts. A frequently stated rationale for this view that no tort arises from a "wrongful" injunction is that any error arising from the incorrect issuance of the preliminary injunction stems from the court, and not from the party seeking the injunction. *KKK*, 564 N.W.2d at 180–81; *Wallace*, 573 P.2d at 1288; 42 Am.Jur.2d Injunctions § 337.

The majority's view mistakenly applies "wrongful" to describe not the court's action, but the party seeking the injunction. Under the federal rule, after which our rule is modeled, a party is wrongfully enjoined "when it turns out the party enjoined had the right all along to do what it was enjoined from doing." *Nintendo of America, Inc. v. Lewis Galoob Toys*, 16 F.3d 1032, 1036 (9th Cir.1994). This description in no way suggests that actual wrongful conduct by the party seeking the injunction is required. There is no requirement of malice or bad faith to recover for a wrongful injunction. Rather, consistent with the accepted definition of wrongful, it is a substantial departure from commonly understood preliminary injunction law under Rule 65(C) and its counterparts around the country to conclude that a wrongfully enjoined person is entitled to damages depending on the party's subjective state of mind.

Finally, the majority's solution exacerbates the tension between the Tort Claims Act and the Trial Rule. The majority establishes a rule that attempts to hold the governmental entity in check by making it liable if it should act in bad faith or with malice in seeking a preliminary injunction. That is a tort if committed by a private person, but it is also a tort that the Tort Claims Act immunizes if committed by a governmental entity. Thus, application of the Tort Claims Act does not turn on the subjective state of mind of the governmental entity. Rather, with the exception of a claim for false imprisonment or false arrest, under the Tort Claims Act the governmental entity is immune from suits for malicious prosecution, which include an element of bad faith. *E.g., Butt v. McEvoy*, 669 N.E.2d 1015, 1018 (Ind.Ct.App.1996). Specifically, this immunity for malicious prosecution extends to the context of the "the initiation of a judicial or administrative proceeding." *Id.* at 1017 (construing Ind.Code § 34–4–16.5–3(5), which was repealed but not altered in the adoption of Ind.Code § 34–13–3–3(5)); *Clifford v. Marion County Prosecuting Attorney*, 654 N.E.2d 805, 809 (Ind.Ct.App.1995) ("In view of the fact that the primary tort which arises from initiating legal proceedings necessarily includes the element of bad faith, the presence of bad faith cannot remove the conduct from the very protection envisioned by the [Tort Claims] Act."). As the Court of Appeals emphasized in *Clifford*, an activity is authorized under the Tort Claims Act "regardless of whether it was done negligently or done with improper motive." 654 N.E.2d at 810. Ironically, because a suit for malicious prosecution or abuse of process is by all accounts a tort, the very language the majority invokes to describe the non-immune governmental action, i.e., malicious or in bad faith, simultaneously invokes the immunity of the Tort Claims Act.

The Tort Claims Act does include language along the lines of the rule established by the majority for two circumstances not relevant here.[2] Indiana Code

---

2. The majority suggests that Indiana Code section 34–13–3–3(8) might also apply to immunize Noble County's actions in obtaining the preliminary injunction. I disagree. This provision applies to a situation where a statute is subsequently declared unconstitutional. Here, Noble County did not act under the "apparent authority" of any statute that has

section 34–13–3–3(8) provides immunity for "an act or omission performed in good faith and without malice under the apparent authority of a statute which is invalid if the employee would not have been liable had the statute been valid." Indiana Code section 34–13–3–3(20) provides for governmental immunity from errors resulting from the Y2K bug so long as the act or omission did not amount to "gross negligence, willful or wanton misconduct, or intentional misconduct." Thus, where the legislature intended to exempt bad faith actions from immunity, it has said so. There is no such provision in the "judicial proceedings" or "performance of a discretionary function" sections on which Noble County relies.

The Tort Claims Act is substantive law enacted by the legislature. It grants immunity in tort to governmental entities for initiation of judicial proceedings. Rule 65(C) imposes the requirement that the government assume the risk of liability if it chooses to seek a preliminary injunction. I agree that this provision could have been overridden by the legislature if it had chosen to do so. But the Rule and statute as presently written are compatible and do not encroach upon one another. Both have been repeatedly adopted by the General Assembly. In sum, Noble County agreed to reimburse Rogers when it sought to obtain a preliminary injunction. I would affirm the trial court.

DICKSON, J., concurs.

subsequently been called into doubt. It acted wrongly under a valid statute.